831 A.2d 587

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Jeffrey TAYLOR, Appellant.**

Supreme Court of Pennsylvania.

Submitted Feb. 3, 2003.

Decided Sept. 10, 2003.

Carole Melissa Owen, John A. Knorr, Pittsburgh, for Jeffrey Taylor, Appellant.

Michael Wayne Streily, Karen T. Edwards, Pittsburgh, for Com. of PA, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

JUSTICE NEWMAN.

Jeffrey Taylor (Taylor) appeals from an Order of the Superior Court, which affirmed an Order of the Court of Common Pleas of Allegheny County (PCRA court) denying his petition for post-conviction relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. For the reasons that follow, we affirm the decision of the Superior Court.

## FACTS AND PROCEDURAL HISTORY

On November 9, 1995, Taylor met with Anthony Martin (Martin) and Paris James (James), at which point the three decided to rob a jitney (unlicensed taxi) driver. They approached Harold Michie (Michie) at a jitney station in the Hill District of Pittsburgh and asked Michie to transport them to a different part of the district. During the trip, James brandished a shotgun, pointed it at Michie, and ordered Michie to stop and exit the vehicle. After Michie refused to get into the trunk of the car, Taylor and Martin forced him into the trunk. Taylor, Martin, and James then drove the car to a gas station in the Oakland section of the city. At this location, James pulled out his shotgun again and pointed it at the gas station attendants while Taylor and Martin robbed the men of approximately sixty dollars. James and Martin then dropped Taylor off on Wylie Avenue and drove to a nearby baseball field, where they shot Michie at least six times in the head and body, killing him.

In a statement to police, Taylor recounted his participation in the above events. Taylor also told detectives that he knew James and Martin were going to kill Michie because the two had previously robbed a different jitney driver, forced him into the trunk, and killed him. Following a trial that commenced on January 27, 1998, the jury convicted Taylor of

robbery,[1] robbery of a motor vehicle,[2] kidnapping,[3] conspiracy,[4] and involuntary manslaughter.[5] The trial court sentenced Taylor to terms of imprisonment of: (1) five to twenty years for robbery; (2) five to twenty years for robbery of a motor vehicle; (3) five to twenty years for kidnapping; (4) five to twenty years for conspiracy; and (5) two-and-one-half to five years for involuntary manslaughter. The court imposed all sentences consecutively, arriving at an aggregate sentence of twenty-two-and-one-half to eighty-five years' incarceration.

Taylor appealed the Judgment of Sentence, contending, *inter alia*, that the sentence of two-and-one-half to five years' imprisonment imposed for involuntary manslaughter violated the then-applicable Sentencing Guidelines. The Superior Court agreed and remanded the matter to the trial court for resentencing on the involuntary manslaughter conviction.[6] On remand, the trial court imposed no additional sentence for involuntary manslaughter.[7] Accordingly, Taylor is currently serving an aggregate term of twenty to eighty years' imprisonment.

1. 18 Pa.C.S. § 3701(a)(1)(i).

2. 18 Pa.C.S. § 3702.

3. 18 Pa.C.S. § 2901(a)(2).

4. 18 Pa.C.S. § 903(a)(1).

5. 18 Pa.C.S. § 2504.

6. Specifically, the trial court incorrectly calculated the prior record score for involuntary manslaughter. Section 303.7(a) of the then-applicable Sentencing Guidelines, 204 Pa.Code § 303.7(a), provided that "when imposing sentences for convictions arising out of the same transaction, the prior record score is computed for the offense with the highest gravity score in such transaction." In the present case, the kidnapping charge carried a higher gravity score, so the trial court improperly computed a prior record score for involuntary manslaughter. The trial court also inappropriately applied the deadly weapon enhancement when determining the sentence for involuntary manslaughter; again, pursuant to the then-applicable Sentencing Guidelines, such enhancement only applies to the offense with the highest gravity score in the same transaction. *See Commonwealth v. Carmichael*, 707 A.2d 1159, 1161 (Pa.Super.1998).

7. The record does not indicate why the trial court did not impose an additional sentence for the involuntary manslaughter conviction on remand.

On September 26, 2000, Taylor filed a timely PCRA petition. The PCRA court appointed counsel, C. Melissa Owen, Esquire (Attorney Owen), to represent Taylor. Attorney Owen filed an amended PCRA petition on February 20, 2001, and a second amended petition on April 2, 2001. In his amended petitions, Taylor contended that his appellate counsel [8] was ineffective for failing to challenge the decision of the trial court to admit his confession when the Commonwealth had failed to establish the *corpus delicti* for robbery, robbery of a motor vehicle, conspiracy, and kidnapping. By Order dated June 14, 2001, the PCRA court dismissed the petition without a hearing, prompting Taylor to appeal to the Superior Court. In a memorandum Opinion, the Superior Court affirmed the denial of post-conviction relief. We granted allowance of appeal to address a conflict in our jurisprudence regarding the prerequisites of the "closely related crimes exception" to the *corpus delicti* rule.

## DISCUSSION

It is beyond cavil that, in this Commonwealth, "a confession is not evidence in the absence of proof of the *corpus delicti* .... [W]hen the Commonwealth has given sufficient evidence of the *corpus delicti* to entitle the case to go to the jury, it is competent to show a confession made by the prisoner connecting him with the crime." *Gray v. Commonwealth,* 101 Pa. 380, 386 (Pa.1882). *See Commonwealth v. Smallwood,* 497 Pa. 476, 442 A.2d 222, 225 (1982) (extending rule to admissions and statements of the accused; not limited to formal confessions). *"Corpus delicti"* means, literally, "the body of a crime." Black's Law Dictionary 344 (6th ed. 1990). The *"corpus delicti* consists of the occurrence of a loss or injury resulting from some person's criminal conduct." *Commonwealth v. McMullen,* 545 Pa. 361, 681 A.2d 717, 721 (1996). The *corpus delicti* rule requires the Commonwealth to present evidence that: (1) a loss has occurred; and (2) the loss occurred as a result of a criminal agency. *Commonwealth v.*

8. Taylor did not challenge the actions of trial counsel because trial counsel filed a motion to suppress the confession, which the trial court denied.

*May,* 451 Pa. 31, 301 A.2d 368, 369 (1973). Only then can "the Commonwealth ... rely upon statements and declarations of the accused" to prove that the accused was, in fact, the criminal agent responsible for the loss. *Id.* "The grounds on which the rule rests are the hasty and unguarded character [that] is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." *Commonwealth v. Turza,* 340 Pa. 128, 16 A.2d 401, 404 (1940).

In *Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258 (1974), we explained that the *corpus delicti* rule should not be viewed as a condition precedent to the admissibility of the statements or confessions of the accused. *Id.* at 274, n. 41. Rather, the rule seeks to ensure that the Commonwealth has established the occurrence of a crime before introducing the statements or confessions of the accused to demonstrate that the accused committed the crime. The rule was adopted "[t]o avoid the injustice of a conviction where no crime exists.... The fact that a crime has been committed by someone must be shown before a confession will be received." *Commonwealth v. Leslie,* 424 Pa. 331, 227 A.2d 900, 904 (1967) (internal citations omitted) (a minor defendant confessed to having committed arson, but the Fire Marshal could not support his suspicion that the fire was of an incendiary origin; accordingly, this Court overturned the conviction).

Starting in 1973, the Superior Court began to develop an exception to the *corpus delicti* rule, commonly referred to as the "closely related crimes exception." In *Commonwealth v. Stokes,* 225 Pa.Super. 411, 311 A.2d 714 (1973), the defendant admitted in a statement to police that he pointed a gun at a police officer and pulled the trigger, but no round discharged from the weapon. The Commonwealth charged Stokes with pointing a firearm and attempt with intent to kill. To prove attempt with intent to kill, the Commonwealth had to establish that Stokes attempted to fire a loaded gun at a person. However, absent the confession of Stokes, the Commonwealth had no evidence of attempt with intent to kill. Stokes argued that the Commonwealth failed to establish the *corpus delicti*

of attempt with intent to kill, but the Superior Court determined that the statement could be introduced as evidence of that crime because:

> The two crimes charged arose from a single transaction, and had in common the element of pointing a firearm at someone. Perhaps if the two crimes were distinct, in time or nature or both, the case would be different; whether it would need not be decided. As it is, by proving the crime of pointing a firearm, the Commonwealth provided sufficient protection against "the hasty and unguarded character ... often attached to confessions[,"] to entitle it to offer the confession of attempt with intent to kill.

*Id.* at 715–716 (quoting *Turza,* 16 A.2d at 404). *Accord Commonwealth v. Steward,* 263 Pa.Super. 191, 397 A.2d 812, 815 (1979) (statement admitting to attempted robbery and aggravated assault admissible, where independent proof of both crimes did not exist, "because both charges arose out of the same criminal episode, and a conviction of either or both was consistent with the circumstances and the injury suffered"); *Commonwealth v. Daniels,* 281 Pa.Super. 334, 422 A.2d 196, 199 (1980) (closely related crimes exception applied because the crimes of possession and possession with intent to deliver "arose from the same transaction and contained a common element"); *Commonwealth v. DiSabatino,* 399 Pa.Super. 1, 581 A.2d 645, 648 (1990), petition for allowance of appeal denied, 527 Pa. 629, 592 A.2d 1297 (1991) (possession and possession with intent to deliver arising from the same criminal transaction are closely related crimes and implicate the exception).

In *Commonwealth v. Rieland,* 324 Pa.Super. 115, 471 A.2d 490 (1984), the Superior Court found that the crimes of burglary and conspiracy, arising "from a common transaction, albeit not exactly a singular transaction[,]" were sufficiently closely related that "admission of [Rieland's] statement that he was involved in a criminal conspiracy ... would in no way defeat the purposes of the *corpus delicti* rule[,]" even though the Commonwealth independently established only the existence of a burglary. *Id.* at 493. In *Commonwealth v. Tessel,*

347 Pa.Super. 37, 500 A.2d 144 (1985), the defendant gave police a statement in which he admitted that he had surreptitiously entered a motel room, removed the television set from that room, and left. The next day, the police searched Tessel's room and found the TV. The Commonwealth was able to establish the *corpus delicti* of only a theft charge because there was no independent evidence that someone had entered the motel room with felonious intent. The Superior Court held that the trial court properly allowed a burglary charge to stand, reasoning as follows:

> Where a defendant's confession relates to two separate crimes with which he is charged, and where independent evidence establishes the *corpus delicti* of only one of those crimes, the confession may be admissible as evidence of the commission of the other crime. This will be the case only where the relationship between the two crimes is sufficiently close to ensure that the policies underlying the *corpus delicti* rule are not violated. Here, we have concluded, **the relationship** between the theft and the burglary **was sufficiently close** to permit the court, upon proof of the *corpus delicti* of the theft, to admit [Tessel's] confession as evidence that [Tessel] had committed not only the theft but also the burglary.

*Id.* at 148–149 (emphasis added). The Superior Court expressly noted that in *Rieland*, it had applied the exception even though the crimes charged in that case, burglary and conspiracy, did not share a common element.[9] *Tessel*, 500 A.2d at 150 (explaining that in *Rieland*, "the confession was also admissible to prove the commission of the inchoate crime of criminal conspiracy, despite the lack of any common element, because the crimes of burglary and conspiracy arose from a common transaction") (internal quotation omitted).

In *Commonwealth v. McMullen*, 545 Pa. 361, 681 A.2d 717 (1996), this Court adopted the closely related crimes exception

9. The Superior Court recognized that conspiracy is an inchoate crime, but did not base its decision not to require a common element on the inchoate nature of the crime; rather, the Superior Court focused on the relationship of the crimes in the context of the criminal transaction. *Tessel*, 500 A.2d at 150.

to the *corpus delicti* rule. McMullen admitted to burglarizing the Grocery Box food store in Orbisonia, Pennsylvania along with another man, Adam Wiser (Wiser). He stated that during their flight, they encountered Dominic Barcelona (Barcelona) on a bridge, at which point Wiser threw Barcelona from the bridge. The Commonwealth had independent evidence of the burglary but, before McMullen confessed, believed that Barcelona had died of natural causes. The Commonwealth sought to introduce the statement as evidence of both burglary and homicide. We rejected the attempt, reasoning as follows:

> [H]ere the relationship between the homicide and burglary charges was not so sufficiently close as to eliminate the danger that [McMullen's] statement might lead to a conviction of a non-existent crime. Indeed, nothing links the charges except [McMullen's] statement. **Furthermore, burglary and homicide do not share a common element.**

*Id.* at 723 (emphasis added). Accordingly, we held that the closely related crimes exception could not be used to support the *corpus delicti* of the homicide charge.

In 1998, we decided two cases, *Commonwealth v. Verticelli*, 550 Pa. 435, 706 A.2d 820 (1998), and *Commonwealth v. Bardo*, 551 Pa. 140, 709 A.2d 871 (1998), cert. denied, 525 U.S. 936, 119 S.Ct. 350, 142 L.Ed.2d 289 (1998), which form the crux of the conflict presently before us. In *Verticelli*, the police arrived on the scene of an accident and found a motorcycle that obviously had been traveling southbound, crossed the centerline, and struck a mailbox and telephone pole on the northbound side of the road; the motorcycle operator was not present when the police arrived at the scene. After interviewing several witnesses at the scene, one of the officers arrived at the home of Verticelli, whereupon Verticelli admitted that he "dumped" the vehicle on the way to a bar. The officer noticed the odor of alcohol and asked Verticelli to perform field sobriety tests, which he failed. The Commonwealth charged Verticelli with leaving the scene of an accident and driving under the influence of alcohol (DUI). Verticelli objected to the DUI charge because the Commonwealth had not

established the *corpus delicti* of that crime—only the confession established that Verticelli had been driving the motorcycle and, without the confession, there was no evidence that the operator was under the influence at the time of the accident.

This Court agreed that the Commonwealth had not independently established the *corpus delicti* of the DUI charge, but we determined that the crimes were sufficiently closely related to implicate the exception to the general rule. Professing to follow *McMullen*, we explained that "the closely related crime exception applies where the crimes at issue **share a common element** and are temporally related. Obviously in this instance we have a temporal relationship between the crimes charged as the DUI arose from the same incident as did the offense of leaving the scene of an accident." *Verticelli*, 706 A.2d at 826 (emphasis added). "The DUI charge shares the common element of operation of a motor vehicle with the charge of leaving the scene of an accident. Given the commonality of elements between the two offenses and the fact that they arose from the same incident, we find that the trial judge did not abuse his discretion in admitting [Verticelli's] statement" pursuant to the exception. *Id.* We did note that "application of the closely related crime exception must be determined on a case-by-case basis." *Id.* at 821.

Less than one month after filing *Verticelli*, we decided *Bardo*, a capital murder case in which the defendant confessed to police that he sexually molested his three-year old niece before strangling her to death. The Commonwealth charged him with first-degree murder and aggravated indecent assault. At trial, the Commonwealth introduced evidence that the body of the victim was found in a plastic bag in a creek and that the victim died as a result of unnatural causes, sufficient to establish that a murder occurred, but did not present any independent evidence of aggravated indecent assault before introducing Bardo's confession. Even though the Commonwealth independently established the existence of only one crime, murder, "[p]ursuant to the rule of *Verticelli*, the confession is admissible as to both crimes, for the relationship between the two crimes is close and the policy underlying the

*corpus delicti* rule has not been violated." *Bardo,* 709 A.2d at 874. "Under those circumstances where the relationship between the crimes is sufficiently close so that the introduction of the statement will not violate the purpose underlying the *corpus delicti* rule, the statement of the accused will be admissible as to all the crimes charged." *Id. Accord Commonwealth v. Jacobs,* 556 Pa. 138, 727 A.2d 545 (1999), habeas corpus conditionally granted on other grounds, 129 F.Supp.2d 390 (M.D.Pa.2001) (quoting and applying the test as articulated in *Bardo*). Importantly, the crimes of murder and aggravated indecent assault do not share a common element. *See* 18 Pa.C.S. §§ 2502, 3215.

■ We granted allowance of appeal in this case to address the apparent conflict between *Verticelli,* which seems to require that the crimes have a common element and are temporally related in order to satisfy the closely related crimes exception, and *Bardo,* which mandates a relationship between the crimes that is sufficiently close so that the introduction of the confession does not violate the purpose underlying the *corpus delicti* rule. We now clarify that the standard articulated in *Bardo,* requiring the relationship between the crimes to be sufficiently close so as to avoid admitting a confession for a crime that did not occur, is the proper test for determining whether the closely related crimes exception to the *corpus delicti* rule applies.

When this Court adopted the closely related crimes exception in *McMullen,* our primary rationale for finding that the exception did not apply was that the confession, coupled with the independent proof of the burglary, did not eliminate the danger that McMullen could be convicted of a murder that did not occur because nothing, other than the confession, linked the crimes. *McMullen,* 681 A.2d at 723. As a secondary, alternative rationale, we explained that "burglary and homicide do not share a common element." *Id.* We based our decision in *McMullen* on the long line of Superior Court cases applying the closely related crimes exception, including *Tessel,* explicitly, and *Rieland,* two cases in which the Superior Court noted that crimes without common elements, nevertheless, can

still be closely related for purposes of the exception. A thorough review of Superior Court jurisprudence in the era leading up to *McMullen* demonstrates that that tribunal believed that the existence of an element in common between the crimes charged is evidence of a relationship between the crimes, but not a prerequisite to finding a sufficiently close relationship to warrant admission of the confession as to both crimes. Our adoption of the exception without clarification in *McMullen* operated as an implicit approval of this concept.

Likewise, in *Verticelli,* we professed to follow *McMullen,* as well as *Tessel* and the entire line of Superior Court cases, again without expressing any reservations about the manner in which the Superior Court and this Court had applied the exception. Completing the circle, one month later, in *Bardo,* we again explained the closely related crimes exception and professed to follow *Verticelli.* Where *Verticelli* added a common element requirement, *Bardo* tacitly removed it.

Many jurisdictions have encountered difficulty in applying the *corpus delicti* rule, especially in light of the trend in modern statutes to define criminal offenses more precisely and in greater detail. *See Willoughby v. State,* 552 N.E.2d 462 (Ind.1990); *State v. Parker,* 315 N.C. 222, 337 S.E.2d 487 (1985); McCormick on Evidence, Fifth Edition § 147 at 215–216 (1999). The federal courts began to do away with the *corpus delicti* rule fifty years ago when, in *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), the United States Supreme Court explained:

> [W]e think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti.* It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense.

*Id.* at 93, 75 S.Ct. 158. *Accord United States v. Wilson*, 436 F.2d 122, 124 (3rd Cir.1971), cert. denied, 402 U.S. 912, 91 S.Ct. 1393, 28 L.Ed.2d 654 (1971) (the prosecution must present "substantial evidence which would tend to establish the trustworthiness of the statement"). Some states have followed suit, abrogating the strictures of the *corpus delicti* rule in favor of an approach measuring the reliability of the defendant's confession or admission. *See, e.g., Short v. State*, 980 P.2d 1081 (Ok.Crim.App.1999); *Parker*, 337 S.E.2d at 495 ("[w]e adopt a rule in non-capital cases that when the State relies upon the defendant's confession to obtain a conviction, it is no longer necessary that there be independent proof tending to establish the *corpus delicti* of the crime charged if the accused's confession is supported by substantial independent evidence tending to establish its trustworthiness"). *See also* Note, *Confession Corroboration in New York: A Replacement for the Corpus Delicti Rule*, 46 FORDHAM L. REV. 1205, 1216 (1978) (quoted in *Parker*, 337 S.E.2d at 493).

Some courts have adopted essentially a trustworthiness doctrine in situations similar to the case *sub judice*, where the *corpus delicti* of one crime is established but the prosecution has not presented evidence independent of the confession to demonstrate the occurrence of other crimes as part of the same criminal transaction. In *State v. Morgan*, 204 Ariz. 166, 61 P.3d 460 (Ct.App.2002), the prosecution presented independent evidence of several sexual crimes in addition to Morgan's statement to police, in which he confessed to the sexual crimes for which the prosecution had independent evidence as well as engaging in oral sex with the twelve-year old victim, for which the prosecution did not have independent evidence. The court determined that, "[a]lthough, absent Morgan's confession, the evidence did not show that [the victim] and Morgan had any oral sexual contact, the confession was sufficiently corroborated to eliminate any concern that it could be untrue and, thus, supported a reasonable inference that the offense had occurred." *Id.* at 467 (internal quotation omitted). In *Willoughby*, the Indiana Supreme Court stated the following:

We are persuaded that where a defendant confesses to several crimes of varying severity within a single criminal episode, strict and separate application of the *corpus delicti* rule to each offense adds little to the ultimate reliability of the confession once independent evidence of the principal crimes is introduced. The confession at that point has been substantially corroborated. In such a case the confession stands as direct evidence of each crime, even those not separately corroborated, if the independent evidence establishes the *corpus delicti* of the principal crime or crimes.

*Id.* at 467. It is not our intent to abandon a century-and-a-half of *corpus delicti* jurisprudence in this Commonwealth in order to adopt a trustworthiness approach, as that issue is not before us today. However, the trend towards a more flexible formulation of the requirements for admitting a confession is informative.

■ The strict application of *Verticelli* suggested by Taylor might render his confession inadmissible to prove robbery and conspiracy. However, Taylor's interpretation could allow the Commonwealth to successfully prosecute a defendant who confessed to killing a pedestrian while driving drunk for both "DUI" and "homicide by vehicle while DUI," occurring simultaneously, even if the Commonwealth only had results of field sobriety tests and could not present any evidence of a death or collision. *Verticelli* would not afford this hypothetical defendant sufficient protection from being convicted of a homicide that he or she did not commit. Accordingly, we cannot accept the common element requirement articulated in *Verticelli*. The purpose behind the *corpus delicti* rule is the ultimate consideration in determining whether two crimes are closely related so as to implicate the exception. Where the relationship between the crimes to which the defendant has confessed is close and the policy underlying the *corpus delicti* rule—to avoid convictions for crimes that did not occur—is not violated, the exception renders the confession admissible for all closely related crimes.

In the present case, Taylor contends that appellate counsel was ineffective for failing to raise on appeal the trial court's

admission of his confession to support the charges of kidnapping, robbery, and conspiracy. We have explained that, to be entitled to relief on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of that counsel's deficient performance. *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 213 (2001). One can glean an inconsistency between *Verticelli* and *Bardo*. Therefore, the claim Taylor contends his appellate counsel should have raised, that the Commonwealth failed to establish the *corpus delicti* of kidnapping, robbery, and conspiracy, might have arguable merit. However, now that we have determined that *Bardo* is a proper articulation of the closely related crimes exception, Taylor cannot demonstrate that he suffered prejudice because the Commonwealth established that those crimes were closely related to the homicide, as discussed below. *See Pierce*, 786 A.2d at 221 ("[a]bsent a demonstration of prejudice, [a PCRA petitioner] cannot prevail on a claim for ineffective assistance of counsel and no further inquiry is warranted").

■■■ Before seeking to admit the confession of Taylor, the Commonwealth introduced into evidence that police found Michie dead in the trunk of his own car as the result of multiple gunshot wounds to the head and neck. The police had been looking for Michie, who had been reported missing, for more than a day. The coroner determined that the manner of Michie's death was homicide. These facts provide, at the least, independent corroboration of a homicide and, possibly, kidnapping, the principal crimes in this heinous criminal episode. Additionally, the confession of James, Taylor's co-conspirator, offered during the course of the trial of Taylor, was consistent with the confession of Taylor. The other crimes to which Taylor confessed (robbery and conspiracy) share a sufficiently close relationship with the other charges because, as the Superior Court and PCRA court determined, "there was one continuing incident occurring at

roughly the same time, and the victim of each crime [Michie] was the same." *Commonwealth v. Taylor*, No. 1373 WDA 2001, page 5, 806 A.2d 467 (Pa.Super. June 7, 2002). The confession and independent evidence presented by the Commonwealth are sufficient to overcome the danger of a conviction where no crime was in fact committed.

## CONCLUSION

For the foregoing reasons, we affirm the Order of the Superior Court denying the request of Taylor for relief pursuant to the PCRA. The closely related crimes exception does not require that the crimes share a common element.