J-S02040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| FRANK ADAM YEAGER | |
| Appellant | No. 1266 EDA 2016 |

Appeal from the PCRA Order April 4, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0000377-2013

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, J., and MOULTON, J.

MEMORANDUM BY MOULTON, J.:                **FILED JUNE 13, 2017**

Frank Adam Yaeger appeals from the April 4, 2016 order of the Lehigh County Court of Common Pleas denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  We affirm.

The trial court set forth the following facts:

> The victim was a salesperson for Pulte Homes at its new development in Upper Macungie Township, Lehigh County. On November 25, 2012, just before closing time at 7:00 p.m., she was alone in the office at the development. [Yeager] entered the office and asked the victim if she would show him one of the model homes.  The victim became suspicious because of the way [Yeager] was acting and because he did not ask for information about the home.  She told him to look at the home himself.  He went to the model home and was there for about 45 minutes.  It was [Yeager]'s plan to get the woman alone in an upstairs bedroom of the model home and to rape her there.  When he was upstairs in the model home, he looked from the windows to see if the victim was coming.  To prepare for the rape, he closed the curtains in a bedroom and turned off the lights.

When the victim did not come to the model home, [Yeager] returned to the office and told her there was a water leak in the home and he wanted to show it to her. She was still suspicious and she refused to go with him. [Yeager] continued to ask her to inspect the leak. A male co-worker of the victim then entered the office at which point [Yeager] quickly left. [Yeager] went to his pickup truck and waited for the male co-worker to leave. After a while, [Yeager] got tired of waiting and drove off.

In various statements, [Yeager] admitted that it was his plan to lure the victim into a bedroom on the second floor of the model home and to rape her there. He stated that he chose the office closing time because of the likelihood that the woman would be alone.

[Yeager] fantasized about raping women for many months before this incident. He developed a plan for the rape of this victim. Included in his statement to the pre-sentence investigator was the following:

> I did a massive on-line search of these people (realtors) . . . I had a plan of action. . . For three months, I drove around every Sunday. I used my truck-driving skills to map out my route. Once I lost my job, I really put myself into it. It was full-time work. I want to attack every girl I see so I was drinking all the time. . . I had a profile. I wanted someone, one of them pretty looking Paris Hilton type thing. I had a very specific guideline. . . The urges were so compelling, I was fighting it with alcohol.

On December 3, 2012, the police executed search warrants of [Yeager]'s pickup truck and his home. At [Yeager]'s home, they found numerous realty packages, the victim's business card and handwritten notes and pictures drawn by [Yeager] about rape. Among the items was a note . . . written by [Yeager] which begins "11/[2]5/12, 7:14 a.m." The attempted rape occurred on November 25, 2012, later in the day. The note reads:

> If your (sic) reading this, I found a realtor woman and raped her. I have been planning and have wanted this my whole life. . . . After

- 2 -

the rape, I have to shut down because I know I will either get caught and go to jail the rest of my life or keep raping until I am stopped. I know it is wrong but I cannot fight the urges. I enjoy this when I sit in the back of some shopping center when there (sic) about to close the hair salon and a woman comes out all alone. I sit, watch her, rubbing myself with a knife in one hand knowing I can rape her at any time or go into an open house in some new development and no one else is around but some realtor bitch and that I could rape her and know (sic) one will hear her scream. No one will come by or in the park watch some bitch jogging and no one else is around. I truly enjoy the hunt and cannot wait for my prize.

Among [Yeager]'s materials at his home was a suicide note which includes the statement that he planned to rape two other realtors instead of the victim but the other realtors were accompanied by a number of people. [Yeager] wrote that he would kill himself after the rape by setting the model home on fire. There were also drawings by [Yeager] of him raping women.

When the state police executed the search warrant on [Yeager]'s pickup truck, they found matches, a lighter, knives, binoculars, a ski mask, gloves, rope, two handguns, several magazines and ammunition, a chain, padlocks, duct tape and realty brochures. In none of the hearings did [Yeager] contest what is described to this point in the Factual Background section.

[Yeager] had contemplated suicide often before the date of this crime. Before he was arrested, he recognized that he had mental health issues. He pursued only limited talk therapy for his psychological problems. [Yeager] has regularly and increasingly abused alcohol over the past decade. There were many episodes of [Yeager]'s becoming intoxicated in the weeks leading up to this crime. [Yeager] admitted that his alcoholism fueled what he planned and what he did to the victim.

Dir. App. Pa.R.A.P. 1925(a) Opinion, 3/13/14, at 3-5.

On April 29, 2013, Yeager pled guilty to attempted rape.[1]  On October 21, 2013, the trial court found Yeager to be a sexually violent predator and sentenced him to 10 to 20 years' incarceration.  On October 30, 2013, Yeager filed a post-sentence motion, which the trial court denied on November 5, 2013.  Yeager timely appealed, and we affirmed his judgment of sentence on February 26, 2015.  On September 9, 2015, Yeager filed a timely PCRA petition.  Following an evidentiary hearing, the PCRA court denied Yeager's petition on April 4, 2016.  On April 27, 2016, Yeager timely filed his notice of appeal.

Yeager raises the following issue on appeal:

A. Did [Yeager]'s conviction result from ineffective assistance of counsel which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place, in that the defense attorney advised [Yeager] to plead guilty after he failed to consider, explain to [Yeager], or raise the possibility of a corpus delicti objection to [Yeager]'s confessions and other statements and writings, in violation of Const. Art. 1, § 9, Pa Const Art. 1, § 9, U.S.C.A. Const. Amend. V, VI, and XIV.

   1. Was trial counsel was [sic] ineffective for failing to advise [Yeager] that the corpus delicti rule could be invoked to preclude a conviction of all of the charges?

   2. Does the corpus delicti rule apply?

   3. Does the closely related crime exception apply to these statements?

_____

[1] 18 Pa.C.S. § 901(a).

> 4. Did the course of conduct pursued by counsel have some reasonable basis designed to effectuate [Yeager]'s interests; and but for counsel's ineffectiveness, was there a reasonable probability that the outcome of the challenged proceeding would have been different[?]

Yeager's Br. at 4 (full capitalization and answers omitted).

Taken together, Yeager's issue and sub-issues challenge trial counsel's ineffectiveness for not discussing with Yeager the *corpus delicti* rule and its potential applicability to his case.

Our review of an order denying PCRA relief is limited to determining "whether the decision of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Melendez–Negron***, 123 A.3d 1087, 1090 (Pa.Super. 2015). We will not disturb the PCRA court's factual findings "unless there is no support for [those] findings in the certified record." ***Id.***

To prevail on an ineffective assistance of counsel claim, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). "In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007). "[C]ounsel is presumed to be effective and the burden of demonstrating

- 5 -

ineffectiveness rests on appellant." ***Commonwealth v. Ousley***, 21 A.3d

1238, 1244 (Pa.Super. 2011). "The failure to prove any one of the three

[ineffectiveness] prongs results in the failure of petitioner's claim." ***Id.***

The PCRA court found:

> [Trial counsel] recognized that [Yeager] provided a lot of damaging detail to the troopers in his statement with regard to taking a substantial step towards commission of the crime. In particular, [Yeager] related, *inter alia*, that he had done "reconnaissance" work to find out personal information about the victim . . .; he had gone into the model home, closed the drapes and turned off the lights in the bedroom, and waited approximately forty-five (45) minutes for the victim to arrive; he was going to kill himself, but he first wanted to see what it was like to rape a realtor.
>
> After reviewing the confession, [trial counsel] spoke with [Yeager] again. Based on his education and experience, [trial counsel] believed that the best option for [Yeager] was not to challenge the confession, as he did not believe that the challenge would ultimately be successful, especially in light of the victim's statement. Additionally, [trial counsel] noted that if [Yeager] did challenge the confession and the victim had to testify at a pretrial hearing, then the offer of an open guilty plea to Attempted Rape[2] would be withdrawn. Consequently, [trial counsel] thought that pursuing the path of cooperation was in [Yeager]'s best interest, as it would limit his exposure with regard to the other counts of the Criminal Information. [Trial counsel]'s strategy was to then focus on mitigation at the time of sentencing, as [Yeager] was a sympathetic

---

[2] In exchange for Yeager's guilty plea to attempted rape, the Commonwealth withdrew the charges for firearms not to be carried without a license, 18 Pa.C.S. § 6106(a)(2), and possessing an instrument of crime, 18 Pa.C.S. § 907(a).

- 6 -

man with a sad background and upbringing. [Yeager] agreed with [trial counsel]'s evaluation and accepted the offer extended by the Commonwealth. The ultimate decision to accept the plea was made by [Yeager].

Opinion, 4/4/16, at 6-7 ("PCRA Ct. Op.").

Trial counsel "reviewed the voluminous discovery," *id.* at 6, which included the incident report, the victim's statement, and conversations with Yeager, N.T., 3/22/16, at 45. Further, during the evidentiary hearing, trial counsel testified that he consulted with Yeager and told him that there were "two ways we can go about this." N.T., 3/22/16, at 31. Trial counsel explained to Yeager that they could "challenge the confession. We can challenge those things and try and get those knocked out. But if we do that, once we file that . . . motion, there will be no plea bargains, and so you'll be irrevocably committed to going to trial at that point." *Id.* Although he advised Yeager that the plea deal was in Yeager's best interest, ultimately it was Yeager's decision to plead guilty. *Id.* at 22, 31-33. Further, Yeager stated at his guilty plea hearing that he was satisfied with trial counsel's representation. N.T., 4/29/13, at 4.

Yeager argues that there was no reasonable basis for trial counsel's course of conduct because, under the *corpus delicti* rule, the confession would have been excluded and the remaining evidence would have been insufficient to support a conviction. We disagree.

The Supreme Court of Pennsylvania has explained:

The *corpus delicti* rule requires the Commonwealth to present evidence that: (1) a loss has occurred; and (2) the loss occurred as a result of a criminal agency. Only then

- 7 -

can the Commonwealth . . . rely upon statements and declarations of the accused to prove that the accused was, in fact, the criminal agent responsible for the loss.

**Commonwealth v. Taylor**, 831 A.2d 587, 590 (Pa. 2003) (internal citation and quotation omitted). Here, the Commonwealth presented sufficient corroborating evidence[3] to satisfy the *corpus delicti* rule: "the police reports, the victim's statement detailing [Yeager]'s overt acts, [and] statements of other realtors." PCRA Ct. Op. at 10. Therefore, a motion challenging the admission of Yeager's confession likely would not have been successful.

The evidence trial counsel reviewed, coupled with his education and experience, led him to believe that challenging the confession was not in Yeager's best interest. Rather, trial counsel's strategy was to focus on mitigation at the time of sentencing.

We conclude that the PCRA court's finding that trial counsel had a reasonable basis for not challenging the confession is supported by the

_____

[3] Our Supreme Court has explained that

corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti.* It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense.

*Taylor*, 831 A.2d at 594.

evidence and is free of legal error. *See Washington*, 927 A.2d at 594 (stating that inquiry is not whether there was more logical course of action, but whether course of action pursued by trial counsel had reasonable basis); *Commonwealth v. Fowler*, 670 A.2d 153, 155 (Pa.Super. 1996) ("Trial counsel inherently has broad discretion to determine the course of defense tactics employed.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/13/2017