J-S81027-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRIAN KEITH CARTER | |
| Appellant | No. 464 MDA 2017 |

Appeal from the Judgment of Sentence September 12, 2016
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0003503-2016

BEFORE: PANELLA, STABILE, and PLATT, JJ.[*]

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 20, 2018**

Appellant, Brian Keith Carter, appeals from the judgment of sentence imposed on September 12, 2016 in the Court of Common Pleas of York County following his conviction of driving under the influence ("DUI") and driving under suspension ("DUS").[1] In this case involving application of the *corpus delicti* rule, Appellant argues the trial court erred by admitting his confession because the Commonwealth failed to establish that a crime had been committed. Following review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(a)(1) and 1501(a), respectively.

In its Rule 1925(a) opinion, the trial court provided a "recitation of the relevant facts elicited [at trial]" as follows:

At or around 10:03 p.m. on March 5, 2016, Trooper Joshua Koach encountered the Appellant and another individual walking northbound on I-83 just south of Exit 39. The trooper testified that the Appellant appeared intoxicated upon first sight as he was seen to lean on his female companion and was stumbling about. The pair indicated to the trooper that they were travelling from Harrisburg to York when they ran out of gas for the vehicle. Confusingly, the pair were walking back in the direction they purported to be coming from and they indicated [] the wrong direction for Harrisburg. The trooper then testified that the Appellant appeared disoriented and confused as to where he was and where he was going. The vehicle was eventually located on the other side of the highway and directly across from the point at which the officer interacted with the Appellant and the female. Trooper Koach noted for the court that, rather than having walked *less than a tenth* of a mile back to a Rutter's gas station, the Appellant and the female had walked to Exit 38, had crossed up and over the pass, and had then tried walking north and back towards the Rutter's.

The Appellant initially indicated to the trooper that his female companion had been the driver; however, under further questioning, the Appellant admitted that he had driven. The Appellant went on to confirm that he had been the driver some four-to-five times after his initial denial. The Appellant told the trooper that he had consumed alcohol at his home in Harrisburg prior to operating the vehicle. The Appellant stated that he had driven until the vehicle ran out of gas and that he had not consumed any alcohol following this event. Under questioning from the court, the trooper stated that the keys for the vehicle were found within the vehicle.

Trial Court Opinion, 7/30/17, at 3-4 (emphasis in original) (references to notes of testimony and some capitalization omitted)

The trial court noted the trooper's description of Appellant as having a strong odor of alcohol as well as bloodshot and glassy eyes. His balance was

severely compromised and he stumbled, falling into the trooper as the trooper was conducting field sobriety tests. To ensure Appellant's safety, the trooper stopped the field sobriety tests and had Appellant sit on the front of the trooper's vehicle. *Id.* at 4.

The trooper also testified that Appellant's certified driving record from PennDOT reflected that his license was suspended. The record did not include any information about reinstatement but rather revealed several DUS suspensions that would extend his period of suspension. Although he did not cite a PennDOT certified record for Appellant's female companion, records from NCIC/CLEAN[2] revealed that her license was suspended as well. *Id.* at 5.[3]

Appellant was arrested and charged with, *inter alia*, general impairment DUI and DUS. Following a September 12, 2016 bench trial, the trial court found Appellant guilty of both offenses. The trial court sentenced Appellant to six months' probation and a $300 fine for DUI as well as a $1,000 fine for DUS. Appellant filed a post-sentence motion, which was denied by operation

_____

[2] National Crime Information Computer/Commonwealth Law Enforcement Assistance Network.

[3] Although the trooper did not have an opportunity to administer field sobriety tests to Appellant's companion, the trooper testified that he "could tell that they were under the influence of alcohol." Notes of Testimony, Trial, 9/12/16, at 25. Further, "[s]he had the odor of an alcoholic beverage about her person" and "admitted she had some alcohol to drink earlier that night." *Id.* at 25-26.

of law on March 1, 2017. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

In this appeal, Appellant presents one issue for this Court's consideration:

> The trial court erred in admitting Appellant's confession under the *corpus delicti* rule that he was the driver of the vehicle when the Commonwealth failed to demonstrate by a preponderance of the evidence that a crime was committed.

Appellant's Brief at 4.

As this Court reiterated in **Commonwealth v. Hernandez**, 39 A.3d 406 (Pa. Super. 2012):

> The *corpus delicti* rule is an evidentiary one. On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference.
>
> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

**Id.** at 411 (quoting **Commonwealth v. Herb**, 852 A.2d 356, 363 (Pa. Super. 2004) (citations omitted)).

In **Herb**, this Court explained the *corpus delicti* rule as follows:

> Pennsylvania law precludes the admissibility of a confession absent proof of the *corpus delicti*, literally, "the body of a crime." **Commonwealth v. Taylor**, 574 Pa. 390, 395, 831 A.2d 587, 590 (2003) (citation omitted). However, the rule is not "a condition precedent to the admissibility of the statements" of an accused. **Id.** "Rather, the rule seeks to ensure that the Commonwealth has established the occurrence of a crime before introducing the

statements or confessions of the accused to demonstrate that the accused committed the crime. The rule was adopted to avoid the injustice of a conviction where no crime exists." *Id.*

Only inculpatory statements fall within the scope of the *corpus delicti* rule. **Commonwealth v. McMullen**, 545 Pa. 361, 368, 681 A.2d 717, 721 (1996). Before such a statement may be admitted into evidence, the Commonwealth must establish: 1) a loss has occurred and 2) the loss occurred as a result of criminal activity. **Taylor, supra** at 395, 831 A.2d at 590. Only then may the Commonwealth introduce a statement to show that the defendant is responsible for the loss. **Id.** For the purpose of admission, the *corpus delicti* may be established by a preponderance of the evidence. **Commonwealth v. Reyes**, 545 Pa. 374, 681 A.2d 724, 727 (1996), *cert. denied,* 520 U.S. 1174, 117 S.Ct. 1445, 137 L.Ed.2d 551 (1997). Moreover, the Commonwealth may establish the *corpus delicti* with circumstantial evidence. **Id.** at 380–82, 681 A.2d at 727; **Commonwealth v. Rivera**, 828 A.2d 1094, 1103–04 (Pa. Super. 2003), *appeal denied,* 577 Pa. 672, 842 A.2d 406 (2004) (quotation omitted).

**Herb**, 852 A.2d at 363 (footnotes omitted). Importantly, "[t]he identity of the person responsible for the criminal act is not part of the *corpus delicti*." **Commonwealth v. Zugay**, 745 A.2d 639, 652 (Pa. Super. 2000), *appeal denied*, 795 A.2d 976 (Pa. 2000).

In the case before us, the trial court reasoned there were potentially two crimes that would make Appellant's statements about driving the vehicle admissible. First, based on the trooper's testimony and backed by records he obtained, neither Appellant nor his female companion had a valid license. There is no suggestion that someone other than Appellant or his companion drove the vehicle until it ran out of gas. Second, circumstantial evidence supported a finding that an intoxicated person—whether Appellant or his

companion—drove past a gas station and ran out of gas less than one-tenth of a mile later. "It is not typical for sober individuals to run out of gas in such a fashion." Trial Court Opinion, 7/30/17, at 7-8.

The trial court explained:

Lending an indicia of veracity to this conclusion, *both* Appellant and the female then walked away from the Rutter's in order to reach an overpass, cross said overpass, and begin a circuitous return toward[] the Rutter's. Tellingly, the Appellant and his female companion were confused as to where they were and the direction in which they travelled, which was shown by their responses to the trooper's queries as to the direction of Harrisburg. The Appellant himself performed poorly on the [field sobriety tests] and, possessing a strong odor of alcohol and glassy bloodshot eyes, was unsteady throughout the encounter. Additionally, we remember that the trooper felt the Appellant and the female were incapable of operating a motor vehicle—so incapable that the Appellant was arrested and the female was deemed too intoxicated for anything beyond being dropped off at the Rutter's. So, whether by dint of suspended licenses or intoxication, either of the potential operators of the vehicle should not have operated said vehicle. By a preponderance of the evidence standard, we have no trouble believing that the Commonwealth established that it was more likely than not that both the Appellant and his companion, lacking active licenses, were disallowed from driving and/or under the influence to the extent that they would not be allowed to drive. Ergo, the Appellant's statements were admissible under the test laid out in **Hernandez, supra.**

*Id.* at 8.

As noted above, *corpus delicti* involves a two-tiered process. In the first step, "[b]efore introducing an extra-judicial admission, the Commonwealth is not required to prove the existence of a crime beyond a reasonable doubt. . . . Rather, it is enough for the Commonwealth to prove that the injury or loss is more consistent with a crime having been committed than not."

- 6 -

*Zugay*, 745 A.2d at 652 (quotations and citations omitted). Recognizing that the *corpus delicti* rule is an evidentiary rule and that our standard of review is one of deference, **see Hernandez**, 39 A.3d at 411, we cannot find that the trial court abused its discretion in determining that the Commonwealth demonstrated by a preponderance of the evidence that a crime had been committed.

In the issue as presented in this appeal, Appellant has challenged only the first tier of the *corpus delicti* rule, *i.e.*, whether the Commonwealth demonstrated by a preponderance of the evidence that a crime occurred. Therefore, it is not necessary for us to consider the second part of the *corpus delicti* rule, *i.e.*, whether the Commonwealth proved, beyond a reasonable doubt, that Appellant—or someone—drove the vehicle while under the influence and under suspension.[4]

Finding no abuse of discretion in the trial court's determination that a crime occurred, we shall affirm the trial court's ruling.

Judgment of sentence affirmed.

---

[4] In his Rule 1925(b) statement of errors complained of on appeal, Appellant also asserted error based on the sufficiency and weight of evidence supporting Appellant's convictions of DUI and DUS. Appellant's Rule 1925(b) Statement, 4/19/17, at ¶¶ 2-3. In his brief filed with this Court, Appellant explains that "[a]fter further review, counsel has proceeded only with Issue #1 of the 1925(b) Statement of Errors." Appellant's Brief at 4 n.1.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/20/2018