J-S23020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY EUGENE GRIM | : | |
| | : | |
| Appellant | : | No. 59 MDA 2022 |

Appeal from the Judgment of Sentence Entered October 5, 2021
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000201-2021

BEFORE: STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED NOVEMBER 09, 2022**

Timothy Eugene Grim appeals from the judgment of sentence entered after he was convicted of driving under the influence of alcohol and controlled substances.[1] Grim challenges the admission of his statements at trial as well as the sufficiency and weight of the evidence. He also challenges the discretionary aspects of his sentence. We affirm.

We glean the following statement of facts from the record, viewed in the light most favorable to the Commonwealth, as it prevailed at trial. *See Commonwealth v. Talbert*, 129 A.3d 536, 542 (Pa.Super. 2015). On September 30, 2020, around 8 p.m., Denise Natalie heard a "loud, screeching noise" while walking in her neighborhood. N.T., Trial, 10/1/21, at 4, 5. When

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(d)(3).

she turned in the direction of the noise, she saw sparks and a wheel coming toward her. *Id.* at 5. She jumped out of the way and then "saw the car parked there with the wheel off." *Id.* Natalie saw a woman get out of the passenger side of the vehicle and a man, later identified as Grim, "come around the back from the driver's side." *Id.* Natalie testified that it was not dark outside at the time. *Id.* at 6. She heard the male yelling, "I just bought this car. It cost me $6,000." *Id.* at 7. After seeing the male's reaction, she returned to her home. *Id.* at 8, 11.

Trooper John Rayho arrived on the scene later and saw Grim's vehicle on a tow truck. Grim was still at the scene. *Id.* at 13. Trooper Rayho asked Grim for his identification, insurance, and registration for the vehicle. *Id.* at 14. Grim replied that he did not have a license. *Id.* He told Trooper Rayho that "he was driving around with his girlfriend after just picking up the car from the dealership." *Id.* Grim stated that "[a]fter driving it around for an hour and a half, he stated that it began to feel like the tire was going flat, and the next thing he knew the tire came off." *Id.* at 15. Trooper Rayho observed that the vehicle's "front passenger side tire was completely off, only one of the axle bolts was still remaining on." *Id.* at 19. He also observed that "[i]t was impossible to determine what had actually caused it to sheer off." *Id.*

Trooper Rayho described Grim's demeanor as "argumentative and combative." *Id.* He testified that Grim "was aggressive and repetitively saying that he just picked up the car. And he was trying to hurry the investigation along." *Id.* Trooper Rayho asked Grim if he had anything to drink and Grim

stated that he had a beer earlier. *Id.* at 17. Trooper Rayho asked Grim to perform a field sobriety test but "[h]e refused because he said that he was on pain killers." *Id.* Grim also informed Trooper Rayho that his legs were injured from his time in the army. *Id.* at 39. Trooper Rayho testified that he asked Grim to complete a field sobriety test because "[h]is walking was unsure" and "[h]is overall demeanor was somebody that appeared to be possibly under the influence of either narcotics or alcohol." *Id.*

Trooper Rayho then arrested Grim and transported him to a hospital for a blood draw. Grim refused the blood draw, stating, "I'm not giving you my blood because I'm on morphine and Percocet." *Id.* at 18. Trooper Grim also determined that Grim's license was suspended due to a prior DUI conviction. *Id.* at 24. Trooper Grim testified that he did not believe that Grim was able to operate his vehicle safely. *Id.* at 32. He also said he had two and a half years of experience as an officer and had encountered individuals under the influence of both alcohol and controlled substances. *Id.* at 17-18.

The Commonwealth also introduced the motor vehicle recording ("MVR") into evidence.[2] Once the Commonwealth rested its case, Grim argued that because the only evidence of Grim's intoxication was from his statement, the prosecution had not made out the *corpus delicti*. *Id.* at 51. The court did not rule on this matter and allowed Grim to present his case.

---

[2] The MVR is not part of the certified record.

Grim testified that his leg injury was due to being hit with an IED while serving in the army. *Id.* at 60. He testified that due to the injury, he had to have multiple surgeries, and "at one time, I was on morphine and Percocet's, but I have been on suboxone for the last two years." *Id.* He testified that he shared his various uses of medication with Trooper Rayho but informed him that he was not taking these medications at that time. *Id.* He said that as of the date of the trial, he had not taken morphine and Percocet for the preceding 17 or 18 months. *Id.* at 63. He stated that he was upset on the day of the incident because of what happened with the car, in conjunction with his post-traumatic stress disorder and anxiety. *Id.* at 61. The court did not find Grim's testimony credible. *See* Memorandum Opinion, filed 3/18/22, at 6.

The trial court found Grim guilty of driving under the influence of alcohol and a controlled substance. At sentencing, it considered the Sentencing Guidelines, the presentence investigation report, Grim's injury from his service in the army, and his need for additional treatment on his ankle due to those injuries. *See* N.T., Sentencing, at 11. It sentenced Grim to a term of 21 months to seven years' incarceration. Grim filed a post-sentence motion challenging his sentence. He also challenged the weight of the evidence. The court denied the motion and this timely appeal followed.

Grim raises the following issues:

> I.    Should [Grim's] alleged self-inculpatory statements have been considered relevant or contributed to a finding of guilt, as the observations of the arresting officer preceding these statements were grossly

insufficient by themselves to establish a *corpus delicti* beyond a reasonable doubt?

II. Even if those statements could contribute to establishing the elements of the offense, would the facts on record as a whole still be legally insufficient to support [Grim's] conviction for driving under the influence simultaneously of drugs and alcohol to such a degree as to impair his driving, where, *inter alia*, there was no evidence of impaired driving, as no witness saw him driving at all, and there was no evidence that he was at that time under the influence of any alcohol?

III. Should [Grim's] conviction be reversed for lack of evidentiary weight in support thereof, where, *inter alia*, the arresting officer's testimony was too vague and his conclusions as to [Grim's] neurochemical state too speculative to sustain a verdict of guilt?

IV. Was the sentence imposed on [Grim] for a run-of-the-mill DUI contrary to utilitarian principles of sentencing, an abuse of discretion given the mitigating circumstances, and excessively harsh given his grave medical problems?

Grim's Br. at 6-7 (answers of trial court, suggested answers, and footnote omitted).

In his first claim, Grim alleges that the court erred in considering his statements to Trooper Rayho. He maintains that the Commonwealth did not establish *corpus delicti* before introducing these statements and therefore the court should not have considered them. He argues that before introducing these statements, there must have been evidence that "(1) impaired driving occurred and (2) it was owing to the influence of drugs and alcohol." Grim's Br. at 24. He maintains the only way to prove such would be "by the present-sense observations of the officer[.]" ***Id.*** He argues that the Commonwealth

did not present evidence of impaired driving. He also argues that Trooper Rayho's observations showed no signs of intoxication.

The *corpus delicti* rule deals with the admission of evidence, which we review for abuse of discretion. **See Commonwealth v. Murray**, 174 A.3d 1147, 1154 (Pa.Super. 2017). The *corpus delicti* rule requires that before the Commonwealth may admit the statements of an accused, it must first prove that: "(1) a loss has occurred; and (2) the loss occurred as a result of a criminal agency." **Commonwealth v. Taylor**, 831 A.2d 587, 590 (Pa. 2003). Once it has presented such proof, the Commonwealth may then "rely upon statements and declarations of the accused to prove that the accused was, in fact, the criminal agent responsible for the loss." **Id.** (citation omitted).

The rule entails a two-step inquiry. "The first step concerns the trial judge's **admission** of the accused's statements and the second step concerns the fact finder's **consideration** of those statements." **Murray**, 174 A.3d at 1154 (emphasis added). Before the statements may be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. **See Commonwealth v. Hernandez**, 39 A.3d 406, 411 (Pa.Super. 2012). However, before the factfinder may consider the statements, the Commonwealth must show *corpus delicti* beyond a reasonable doubt. **See id.**

Grim's argument goes to the second step. **See** Grim's Br. at 22. We find his argument lacking in merit.

Here, the Commonwealth presented sufficient circumstantial evidence to prove the *corpus delicti* of DUI beyond a reasonable doubt. Before

considering Grim's statement, the court heard testimony from Natalie and Trooper Rayho. Natalie testified that she heard a loud screeching sound and when she turned toward the sound, a tire flew by her. She then observed a parked vehicle missing a tire. She saw Grim come around the back of that vehicle from the driver's side. Trooper Rayho testified that Grim's "walking was unsure" and his demeanor was aggressive, argumentative, and combative. N.T. at 39. Trooper Rayho also testified that Grim's "overall demeanor was somebody that appeared to be possibly under the influence of either narcotics or alcohol." *Id.* Trooper Rayho based this conclusion on his two years of experience as an officer and encountering individuals under the influence of both alcohol and narcotics. This evidence adequately proved beyond a reasonable doubt that "(1) a loss has occurred; and (2) the loss occurred as a result of a criminal agency." *Taylor*, 831 A.2d at 590. The trial court properly considered Grim's statements that he had drunk a beer, was the driver of the vehicle, and had taken painkillers, morphine, and Percocet.

Next, Grim challenges the sufficiency of the evidence. He alleges that the evidence is insufficient because the Commonwealth did not prove that he was under the influence of drugs and alcohol. He states that while he admitted to having a beer earlier that day, by the time he was arrested, "it was well out of his system[.]" Grim's Br. at 29. He also argues that the painkillers he admitted to taking could have included non-narcotic medications such as Tylenol or Advil. He also claims that the Commonwealth failed to prove that his driving was impaired. He notes that no one observed him driving carelessly

or unsafely, "and there was no circumstantial evidence from which unsafe driving could be rationally inferred." *Id.* Grim further maintains that the Commonwealth failed to prove that he was still under the influence of alcohol at the time of his interactions with Trooper Rayho.

We review a challenge to the sufficiency of the evidence by determining "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there [was] sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Talbert*, 129 A.3d at 542 (citation omitted). The Commonwealth may sustain its burden "by means of wholly circumstantial evidence." *Id.* at 543 (citation omitted).

Here, the court found Grim guilty of driving under the influence of alcohol and controlled substances. *See* 75 Pa.C.S.A. § 3802(d)(3). To sustain this conviction the Commonwealth was required to prove beyond a reasonable doubt that: (1) Grim's ability to safely drive was impaired; and (2) Grim's impairment was due to his influence of alcohol and a drug or combination of drugs. *See id.*

All the evidence, together, was sufficient to prove Grim's guilt beyond a reasonable doubt. Grim admitted to consuming beer, Percocet, and morphine. He also admitted that he drove his vehicle to the location where his tire eventually fell off. Trooper Rayho testified that Grim's walking was unsure, he was aggressive, combative, and repetitive, and his overall demeanor was that of a person under the influence of alcohol and/or narcotics. Particularly

incriminating was his refusal of the blood draw because he was on morphine and Percocet. That was strong evidence of consciousness of guilt.

To credit most of Grim's claims – such as that the beer ought to have been out of his system, and the painkillers he mentioned could have been non-narcotic medications – would require us to violate the standard of review, which requires us to consider the evidence in the Commonwealth's favor, not in Grim's favor. Moreover, these issues go to the weight of the evidence, not its sufficiency. Grim's final claim – that there was no evidence that he had driven carelessly or unsafely – tilts at a windmill. Unsafe driving is not an element of the crime. Rather, the prosecution must prove that Grim's ability to safely drive was impaired. When viewed in the proper light, the evidence was sufficient to prove all of the elements of the conviction under Section 3802(d)(3).

Grim also challenges the weight of the evidence. He argues that Trooper Rayho's testimony was vague and speculative. He further states that his walking was impaired due to his chronic leg injuries. Grim reiterates his claim that any alcohol he consumed would have been out of his system by the time he encountered Trooper Rayho.

We review the trial court's rejection of a challenge to the weight of the evidence for an abuse of discretion. *See Commonwealth v. Landis*, 89 A.3d 694, 699 (Pa.Super. 2014). The trial court should grant relief on a weight claim if the verdict "is so contrary to the evidence that it shocks one's sense of justice." *Id.* (citation omitted).

Here, the court stated that its review of the MVR showed that Grim "repeatedly told Trooper Rayho he wasn't going to take a blood test, specifically stating 'I got so many drugs in my system it ain't funny.'" Memorandum Op. at 4-5. Though Grim testified that he did not mean that he was on narcotics at the time, the court did not find Grim credible. *Id.* at 6. The court concluded that "[b]ased upon [Grim's] appearance, actions, and overall demeanor, the trooper had ample reason to believe that [Grim] was under the influence of alcohol or narcotics to a degree of which he was not able to safely operate a motor vehicle." *Id.* at 4.

We discern no abuse of discretion. The verdict was not so contrary to the evidence that the trial court's rejection of Grim's weight claim constituted an abuse of discretion.

Grim's final claim challenges the discretionary aspects of his sentence. He argues that the court failed to consider mitigating factors and imposed an excessively harsh sentence.

Challenges to the discretionary aspects of sentence are not automatic. Instead, we must first determine whether the appellant: (1) filed a timely notice of appeal; (2) preserved the issue at sentencing or in post-sentence motion; (3) included a Rule 2119(f) statement in the brief; and (4) raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *See Commonwealth v. Proctor*, 156 A.3d 261, 273 (Pa.Super. 2017). A substantial question exists where the appellant presents an argument that the trial court's sentence was "(1) inconsistent with a

specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted).

Here, Grim has satisfied all the above factors for his sentencing claims. He filed a timely notice of appeal, argued in his post-sentence motion that his sentence was excessive in view of his medical conditions, included a Rule 2119(f) statement in his brief, and set forth a substantial question*. See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa.Super. 2015) ("[A]n excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.") (citation omitted).

Sentencing is a matter within the discretion of the court. *See Commonwealth v. Barnes*, 167 A.3d 110, 122 n.9 (Pa.Super. 2017) (*en banc*). Therefore, we will not disturb a court's sentencing order absent an abuse of discretion. *See id.* If the court had a presentence investigation report, we presume that it was aware of the information the report contained and appropriately weighed it. *See Commonwealth v. Griffin*, 804 A.2d 1, 8 (Pa.Super. 2002).

Here, the record shows that the court at sentencing was aware of the presentence investigation report. We therefore presume it considered its contents and gave it appropriate weight. Defense counsel also presented argument regarding Grim's military service and injuries. The court considered the Sentencing Guidelines and imposed a sentence at the low end of the standard range. We do not find an abuse of discretion.

Judgment of sentence affirmed.

Judge Colins joins the memorandum.

Judge Stabile concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/9/2022