J-S31024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RODGER WILLIAM ANTHONY | |
| Appellant | No. 1536 WDA 2018 |

Appeal from the Judgment of Sentence September 20, 2018
In the Court of Common Pleas of Butler County
Criminal Division at No: CP-10-CR-0000423-2017

BEFORE: OLSON, J., STABILE, J. and MCLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 28, 2020**

Appellant, Rodger William Anthony, appeals from his judgment of sentence of thirty days' to six months' imprisonment for driving under the influence ("DUI")—general impairment, driving while operating privilege is suspended—DUI Related, and harassment.[1] The central issue in this appeal is whether the evidence was sufficient to sustain Appellant's DUI—general impairment conviction. We affirm.

During Appellant's bench trial, the Commonwealth presented two state troopers as witnesses. Appellant did not present any evidence. The first Commonwealth witness, Trooper Graham, testified that at 2:57 a.m. on February 8, 2017, he and Trooper Schmidt were on patrol in Butler, Pennsylvania when they received a radio dispatch that a woman was lying in

_____

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 1543(b), and 18 Pa.C.S.A. § 2709, respectively.

the middle of a roadway screaming. The location was identified as the middle of Protzman Road near Herman Road. N.T., 4/24/18, at 4-6. Upon arrival at approximately 3:20 a.m., *id.* at 11, they observed the victim, Holly Thompson,[2] lying on the roadway. They determined that Thompson needed treatment at a hospital and called for an ambulance. Thompson had minor abrasions and swelling under her right eye and chin, a torn shirt over her left breast with skin abrasions, and cuts to her knees and elbows that appeared to be from striking the pavement. She told the troopers that her boyfriend, Appellant Roger Anthony, with whom she was with that evening, threw her out of a truck. *Id.* at 5-6.

After transporting Thompson to the hospital, the troopers proceeded to Appellant's residence at 117 Kemar Drive in Butler[3] and knocked on his door at approximately 5:00 a.m. *Id.* at 6-7. Appellant answered the door in his boxers and appeared to have just woken up. *Id.* He had bloodshot, glassy eyes and a strong odor of alcohol. *Id.* at 11. Appellant told the troopers "he figured you [the troopers] would be coming to see me." *Id.* at 8. Appellant stated that earlier that evening, he and Thompson had been at Appellant's cousin's house. *Id.* Appellant and Thompson started arguing, and Appellant

---

[2] Thompson did not testify during trial.

[3] Appellant's residence is approximately two miles from where the troopers found Thompson. The Commonwealth did not present evidence on this point, but we ascertained this fact by examining Google Maps. *See Cubano v. Sheehan*, 146 A.3d 791, 794 n.5 (Pa. Super. 2016) (taking judicial notice of a Google map depicting distance between attorney's office and courthouse).

left to return home.  *Id.*  Thompson entered Appellant's truck without shoes or socks and refused to get out.  *Id.*  Appellant started driving home while they continued to argue.  *Id.* at 11.  Appellant told her to get out of his truck, but she refused, so Appellant said, "you stupid fucking bitch, if you don't get out, I'll get you out."  *Id.*  Appellant admitted that he stopped his truck, threw Thompson out of the truck, and left her on the road without shoes or extra clothes.  *Id.*  Appellant admitted drinking beer "that night."  *Id.*; *see also id.* at 10 (Appellant admitted drinking "that evening").

Trooper Graham arrested Appellant for simple assault, harassment, and suspicion of DUI.  The trooper checked Appellant's record and discovered that his license had been suspended for a prior DUI conviction.  *Id.* at 12-13.

The second Commonwealth witness, Trooper Schmidt, did not differ from Trooper Graham with regard to pre-arrest events.  Trooper Schmidt testified that Appellant underwent a post-arrest breathalyzer test at 5:22 a.m. that yielded a BAC of .132%.

The trial court found Appellant guilty of DUI—general impairment, driving while operating privilege is suspended—DUI Related, DUI-high rate of alcohol[4] and harassment.  Following sentencing, Appellant filed timely post-sentence motions.  On August 30, 2018, the trial court arrested judgment on Appellant's conviction for DUI-high rate of alcohol[5] but ordered that the

_____

[4] 75 Pa.C.S.A. § 3802(b).

[5] The Commonwealth did not appeal this decision.

- 3 -

evidence was sufficient to sustain Appellant's conviction for DUI—general impairment under Section 3802(a)(1). The court reasoned with regard to the Section 3802(a)(1) conviction:

> When tested, [Appellant]'s BAC was 0.132%, and [Appellant] admitted to [troopers] that he drank alcohol prior to driving.[6] Based upon the testimony of experienced [troopers], [Appellant]'s conduct evidenced he was not in control of himself while operating the vehicle due to his consumption of alcohol. During [Trooper] Graham's interview with [Appellant], he also observed that [Appellant] had bloodshot, glassy eyes, and a strong odor of alcohol. Additionally, [Appellant]'s decision to leave Ms. Thompson on the roadway without shoes or extra clothes is indicative that he was not exercising appropriate self-control at the time he was operating the vehicle.

Order, 8/30/18, at 8.

The court resentenced Appellant on the three convictions left intact by its post-sentence order. Appellant filed a timely notice of appeal, and both Appellant and the court complied with Pa.R.A.P. 1925.

Appellant raises three issues in this appeal, which we re-order for purposes of convenience:

> 1. Did the trial court err in denying Appellant's motion for judgment of acquittal, as the Commonwealth failed to prove that [he] was under the influence of alcohol at the time he allegedly operated a vehicle where he submitted to a chemical test more than 2 hours later and had ample time to consume alcohol in the interim?

---

[6] Contrary to the trial court's assertion, Appellant did not admit that he drank prior to driving. He only admitted drinking "that night" or "that evening." N.T., 4/24/18, at 10, 11. As our discussion below demonstrates, however, this error does not change the outcome of this appeal.

2. Did the trial court err by overruling Appellant's objection to an out of court statement given by Holly Thompson identifying Appellant as the operator of a motor vehicle, as it constituted inadmissible hearsay?

3. Did the trial court err by overruling Appellant's objection to the admission of a statement [he gave] to police where he admitted to operating a vehicle, when there was no properly admitted independent evidence presented to corroborate his statement and thus a violation of the *corpus delecti* rule?

Appellant's Brief at 7.

We first address whether the evidence was insufficient to support Appellant's conviction for DUI—general impairment under Section 3802(a)(1). We determine "whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense." **Commonwealth v. Cline**, 177 A.3d 922, 925 (Pa. Super. 2017). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." **Commonwealth v. Stokes**, 78 A.3d 644, 649 (Pa. Super. 2013).

Section 3802(a)(1) provides that "an individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." Under this statute,

driving is proscribed after the imbibing of sufficient alcohol such that the individual is rendered incapable of safely driving. In contrast to subsections 3802(a)(2), (b), and (c), all of which require that the offender's blood alcohol level reach a certain specified elevation within two hours of driving, there is no time element explicitly delineated in subsection 3802(a)(1). However, to avoid absurd applications of subsection 3802(a)(1), a time element obviously must be inferred . . . [T]he only relevant time period is that span of time during which an individual is incapable of safely driving due to alcohol intoxication.

*Commonwealth v. Segida*, 985 A.2d 871, 879 (Pa. 2009). Section 3802(a)(1) is an "at the time of driving" offense, *i.e.*, an offense requiring proof that the defendant was "driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol." **Id.** The Commonwealth is not required to prove, however, that the defendant did not drink any alcohol after he stops driving.[7] **Id.** at 879 n.6.

Section 3802(a)(1) permits, but does not require, the Commonwealth to introduce BAC evidence as proof of general impairment:

The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and

---

[7] **Segida** held that the Commonwealth does not have the burden to prove that the defendant did not drink alcohol after "the accident." **Id.** The Court used this phrase because the defendant in that case had been involved in a one-car accident. Logic dictates that the same principle applies when the defendant stops driving without being involved in an accident.

the two hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol—not on a particular blood alcohol level.

*Id.* Significantly, the fact-finder can consider a person's BAC under Section 3802(a)(1) even if the Commonwealth does not relate the BAC back to the time of driving. *Commonwealth v. Thur*, 906 A.2d 552, 565-66 (Pa. Super. 2006). The amount of time elapsed between driving and testing does not affect the admissibility of the test results but only affects the weight of the evidence. *Id.*

In *Segida*, a police officer investigating a report of a one-vehicle accident at 12:20 a.m. observed the defendant's vehicle at the top of a hillside in some brush, rotated 180 degrees. Although the officer did not observe the accident and did not know exactly what time it occurred, he testified it was doubtful the accident occurred more than ten minutes before his arrival due to the level of traffic. The defendant, who smelled strongly of alcohol, acknowledged that he owned the vehicle, had been drinking at a local club, and was driving home when the accident took place. After he failed several field sobriety tests, the police officer drove the defendant to the hospital, where a blood draw revealed a BAC of .326. The trial court, sitting without a

jury, found the defendant guilty under Section 3802(a)(1). Our Supreme

Court affirmed, reasoning:

> The undisputed evidence of [the defendant's] strikingly high blood alcohol level—0.326 percent—is noteworthy. Although precisely how much time had elapsed between the accident and [the defendant's] blood alcohol measurement is unknown, the fact-finder is not required to suspend common sense and ignore the fact that [his] blood alcohol concentration was not just elevated, but enormously elevated—four times the legal limit of 0.08, and twice the highest rate of alcohol pursuant to subsection 3802(c). Furthermore, the accident itself constitutes evidence that [the defendant] drove when he was incapable of doing so safely. There was only one vehicle involved in the accident, and [the defendant] admitted that he had lost control of the vehicle as he was driving home after drinking at a club.

*Id.*, 985 A.2d at 880. While the facts in **Segida** are not identical to the present

case (particularly because the defendant's BAC in **Segida** more than doubled

Appellant's BAC herein), **Segida** teaches us "not . . . to suspend common

sense" when viewing the totality of evidence underlying a Section 3802(a)(1)

conviction. **Id.**

Here, the evidence and reasonable inferences arising therefrom, viewed

in the light most favorable to the Commonwealth and through the prism of

"common sense," **id.**, demonstrates that Appellant drove his truck on

Protzman Road shortly before 2:57 a.m. This fact can be inferred or

supported from the following evidence: (1) the troopers received a radio

dispatch at 2:57 a.m. on a winter night that a woman was screaming in the

middle of Protzman Road; (2) the troopers arrived at the scene approximately

twenty minutes later and found Thompson lying in the road with cuts and

bruises and without shoes or extra clothes; (3) Thompson reported that she had been with Appellant that night and had been thrown out of a truck; and (4) Appellant admitted driving his truck home from his cousin's house with Thompson as a passenger and had an argument with Thompson that resulted in him pushing her out of the truck.

The evidence also supports a finding that Appellant continued driving his truck after ejecting Thompson and eventually arrived at his residence. Both Thompson's and Appellant's testimony established that Appellant drove away from the scene and that the troopers found him approximately two hours later at his home.

Finally, the evidence demonstrates that Appellant was incapable of driving safely at around 3:00 a.m. when this incident occurred. The evidence viewed most favorably to the Commonwealth permits this determination based on a combination of factors: (1) Appellant's admission that he had been drinking "that night" or "that evening" at his cousin's house; (2) Thompson's statement to the troopers that she had been with Appellant and had been thrown out of a truck; (3) Appellant's admission that he had an argument with Thompson that escalated to the point where he threw Thompson out of his truck during the drive home, conduct which suggests substantial intoxication and impaired judgment, (4) Appellant's groggy demeanor, his bloodshot, glassy eyes, and his strong odor of alcohol when the troopers arrived at his house at 5:00 a.m., approximately two hours after he stopped driving, and

(5) Appellant's BAC of .132% at 5:22 a.m., a level substantially above the legal limit of .08%. We emphasize that our affirmance of the trial court's finding that defendant was guilty of a DUI-general impairment under Section 3802(a)(1) did not require the Commonwealth to relate Appellant's BAC at 5:22 a.m. back to when he last drove at around 3:00 a.m. Instead, as fact-finder, the trial court had the authority to view the BAC in conjunction with the other evidence and accord the BAC whatever weight it found appropriate. Nor did the Commonwealth have the burden of proving that Appellant did not drink after he stopped driving. It only had to prove that at the time of driving, Appellant was incapable of driving safely due to consumption of alcohol. Construed in the light most favorable to the Commonwealth, the evidence demonstrates that the Commonwealth met this burden.

For these reasons, we hold that the evidence was sufficient to sustain Appellant's conviction under Section 3802(a)(1).

In his second argument, Appellant asserts that Thompson's statement to the troopers in the roadway that Appellant threw her out of his truck was not admissible under the excited utterance exception to the hearsay rule as found by the trial court. We disagree.

Hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801. Hearsay is inadmissible except as provided by the Rules of Evidence. Pa.R.E.

802. The excited utterance exception to the hearsay rule provides that "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused," is admissible "regardless of whether the declarant is available as a witness." Pa.R.E. 803(2). The following factors are pertinent to whether the excited utterance exception applies:

> 1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so. These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception. It is important to note that none of these factors, except the requirement that the declarant have witnessed the startling event, is in itself dispositive. Rather, the factors are to be considered in all the surrounding circumstances to determine whether a statement is an excited utterance.

*Commonwealth v. Keys*, 814 A.2d 1256, 1258 (Pa. Super. 2003). "There is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rule as an excited utterance." Pa.R.E. 803(2) cmt.

> The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit . . . Rather, each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." . . . The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

*Id.* (citation omitted).

We review the trial court's evidentiary rulings for abuse of discretion. ***Commonwealth v. Belani***, 101 A.3d 1156, 1160 (Pa. Super. 2014). Here, the troopers received a dispatch at 2:57 a.m. regarding a woman lying and screaming in the middle of a public roadway. Upon arriving approximately twenty minutes later, they observed the woman, identified as Holly Thompson, still lying in the middle of the road suffering from fresh injuries that warranted an ambulance. Although this incident occurred on a winter night, February 8, 2017, Thompson had no shoes or socks. Thompson told the troopers that it was her boyfriend, Appellant, who threw her out of his truck. There is no suggestion in the evidence that Thompson had time to reflect upon what occurred during the short interval between her ejectment from the truck and the troopers' arrival to undermine the trustworthiness of her statement to the troopers. In fact, just the opposite may be inferred because Thompson was still lying in the roadway suffering from fresh injuries requiring an ambulance. Under these circumstances, the trial court acted within its discretion in admitting Thompson's statements to the troopers as an excited utterance, a well-known exception to the hearsay rule. ***See Commonwealth v. Jones***, 912 A.2d 268, 282 (Pa. 2006) (shooting victim's statement identifying defendant both ten minutes after being shot and thirty minutes later were admissible under excited utterance exception); ***Commonwealth v. Blackwell***, 494 A.2d 426, 435-36 (Pa. Super. 1985) (victim's statement to police and emergency room nurse one-half hour to 45 minutes after he was

robbed was spontaneous reaction to a startling event, even though he told dispatcher he did not think he needed to go to hospital), *Commonwealth v. Hess*, 411 A.2d 830, 833-34 (Pa. Super. 1979) (in prosecution for simple and aggravated assault, statement by defendant's wife after defendant had been apprehended, approximately one half hour after incident, admissible as excited utterance).

Appellant's reliance on *Commonwealth v. Keys*, 814 A.2d 1256 (Pa. Super. 2003), is misplaced. *Keys* is clearly distinguishable. We held in *Keys* that a statement by the defendant's wife to police that the defendant held a sword to her throat, threatened to cut her throat, dragged her by her hair, and prevented her from leaving home, did not constitute an excited utterance, because (1) thirty minutes elapsed between time she escaped home and her statement to the police, (2) an officer elicited her statement eight to ten blocks from the scene of the incident, (3) her statement was in response to the officer's query, and (4) her statement was a narrative of events that occurred the previous evening. *Id.* at 1259. In contrast, the evidence herein indicates that Thompson's statement took place approximately twenty minutes after Appellant threw her out of the truck, and while she remained under the influence of a startling event.

In his final argument, Appellant argues that the trial court violated the *corpus delicti* rule by admitting his confession to the troopers that he was

operating a vehicle. Based on this claim of error, Appellant seeks a new trial on his Vehicle Code convictions. No relief is due.

The *corpus delicti* rule prohibits the admission of the accused's extra-judicial inculpatory statement unless it is corroborated by independent evidence that a crime actually occurred. ***Commonwealth v. McMullen***, 681 A.2d 717, 720 (Pa. 1996). The rule guards against "the hasty and unguarded character which is often attached to confessions and admissions and the consequent danger of a conviction where no crime has in fact been committed." ***Id.*** at 721.

In addition, "under the closely related crimes exception to the *corpus delicti* rule, where a defendant's confession relates to separate crimes with which he is charged, and where independent evidence establishes the *corpus delicti* of only one of those crimes, the confession may be admissible as evidence of the commission of the other crimes as well." ***Commonwealth v. Hernandez***, 39 A.3d 406, 413 (Pa. Super. 2012). Proof of one *corpus delicti* will suffice for both offenses if the two offenses are "closely related" and "the policy underlying the corpus delicti rule—to avoid convictions for crimes that did not occur—is not violated." ***Commonwealth v. Taylor***, 831 A.2d 587, 596 (Pa. 2003). Thus, in ***Taylor***, the Supreme Court held that the defendant's confession to robbery and conspiracy was admissible under the closely related exception, reasoning:

> [B]efore seeking to admit the confession of Taylor [as to robbery
> and conspiracy], the Commonwealth introduced into evidence that

police found [the victim] Michie dead in the trunk of his own car as the result of multiple gunshot wounds to the head and neck. The police had been looking for Michie, who had been reported missing, for more than a day. The coroner determined that the manner of Michie's death was homicide. These facts provide, at the least, independent corroboration of a homicide and, possibly, kidnapping, the principal crimes in this heinous criminal episode. Additionally, the confession of James, Taylor's co-conspirator, offered during the course of the trial of Taylor, was consistent with the confession of Taylor. The other crimes to which Taylor confessed (robbery and conspiracy) share a sufficiently close relationship with the other charges because, as the Superior Court and PCRA court determined, "there was one continuing incident occurring at roughly the same time, and the victim of each crime [Michie] was the same." . . . The confession and independent evidence presented by the Commonwealth are sufficient to overcome the danger of a conviction where no crime was in fact committed.

*Id.*

Here, before introducing Appellant's statement, the Commonwealth introduced the *corpus delicti* of harassment through the officers' testimony about the radio dispatch at 2:57 a.m., their arrival at the scene at 3:20 a.m., their observations of Thompson lying in the road on a winter night with cuts and bruises that required medical treatment, and her statement that Appellant threw her out of his truck during an argument. The officers arrived at Appellant's residence at 5:00 a.m. and obtained his confession that he was drinking that night and was operating his truck when he got into an argument with Thompson and ejected her from the truck. The crime to which Appellant confessed, DUI, shares a close relationship with his crime of harassment because they took place at the same time. ***Taylor***, ***supra*** (confession to robbery and conspiracy admissible because they took place during "one

continuing incident" involving murder, the crime for which prosecution established *corpus delicti*). Therefore, Appellant's confession to operating the truck was admissible under the closely related exception to the *corpus delicti* rule.[8]

Judgment of sentence affirmed.

Judge Olson joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2020

---

[8] It also deserves mention that Appellant's admission that he threw Thompson out of the truck was admissible under the *corpus delicti* rule, because, as discussed above, the Commonwealth introduced the *corpus delicti* of this offense prior to introducing his confession.