J-S26045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENZEL SALADEEN NICHOLS | : | |
| | : | |
| Appellant | : | No. 360 MDA 2022 |

Appeal from the Judgment of Sentence Entered January 4, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005099-2020

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED SEPTEMBER 30, 2022**

Appellant, Denzel Nichols, appeals from the judgment of sentence entered by the Court of Common Pleas of Lancaster County after a jury convicted him of multiple sex offenses, including rape of an unconscious victim, statutory sexual assault, and aggravated indecent assault on a person less than 16 years of age.  *See* *infra*.  Herein, Appellant contends the trial court erroneously denied his motion for mistrial and deemed admissible his inculpatory statements in violation of the *corpus delicti* rule.  We affirm.

In the summer of 2017, then-21 year-old Appellant had been spending time with several fourteen year-old middle school students, including one boy, J.Y., and two girls, A.A. and the eventual victim in this case, O.J.  N.T. at 89-91, 133.  One evening, O.J. was planning to sleep over A.A.'s house, when

_____

[*] Former Justice specially assigned to the Superior Court.

the two texted J.Y. and asked if he and Appellant wanted to get together. N.T. at 92. Appellant picked up J.Y. and drove over to A.A.'s house, where the girls entered Appellant's car.

Appellant supplied marijuana for everyone to smoke, and he later stopped at his apartment to get money to purchase alcohol, but he returned saying he was unable to find his cash. N.T. at 72. He drove back to J.Y's parent's house, however, and J.Y. was able to secret a half-full bottle of vodka to the car. The four drove to a nearby park, where O.J., A.A., and Appellant drank from the bottle while sitting underneath a walking bridge in the park. N.T. at 95.

The girls quickly became inebriated. N.T. at 95. Appellant and O.J. began to kiss, and A.A. attempted unsuccessfully to stop them, with O.J. telling her to "chill out." N.T. at 135. The group eventually decided to leave the park and drive to A.A.'s house since A.A.'s mother would be at her place of employment all night. J.Y. noted that O.J. needed help walking back to Appellant's car because she was already "drunk." N.T. at 75.

According to the three middle school friends, O.J. sat in the front seat during the drive back to A.A.'s house, and they all recalled Appellant reaching over to O.J. and placing his hand between her thighs. N.T. at 76, 97-98, 136-37. Specifically, A.A. testified that O.J. asked Appellant to place his hand down her pants, N.T. at 137, while O.J. remembered only that Appellant had done so and went so far as to insert his finger inside her vagina. N.T. at 98.

- 2 -

Once back at A.A.'s house, an inebriated O.J. became "erratic," speaking loudly and, at one point, returning to the living room completely "unclothed." N.T. at 77, 140. A.A. recalled that Appellant and O.J. had gone into A.A.'s bedroom while she went to the bathroom. When A.A. exited the bathroom, she saw J.Y. standing in front of the bedroom door, and she tried to no avail to gain entry. N.T. at 137. During that time, she heard Appellant yell directions to J.Y. to keep A.A. out of the bedroom. N.T. at 137-38.

Sometime later, Appellant emerged from the bedroom and said to J.Y., "She's waiting for you." N.T. at 79. J.Y. went to the room and saw O.J. undressed, lying on the bed, either asleep or passed out. N.T. at 80. J.Y. asked Appellant for a ride home, and the two left A.A.'s house, with Appellant appearing in a good mood. N.T. at 80.

A.A. entered her bedroom and found O.J. passed out on the bed. N.T. at 138. The next morning, she confronted O.J. about her episode with Appellant, but O.J. denied having sex. N.T. at 138.

O.J. testified that she remembered nothing about the night at A.A.'s house. N.T. at 99. Her ability to recall was limited to when she awoke the next morning lying in A.A.'s bed wearing only a bra. N.T. at 99.

Three years would elapse before O.J. discussed these events again. Specifically, in March 2020, she was undergoing hospitalization for mental health treatments when she shared the details of her encounter with Appellant. After agreeing to speak with police, she consented to a wiretap of

a cellphone conversation with Appellant. N.T. at 101. Before the wiretap was arranged, however, Appellant contacted O.J. through Instagram. Their next communication, which was wiretapped, occurred through Facetime. During this conversation, Appellant admitted that he had sex with O.J. in the bedroom.[1]

By criminal information, Appellant was charged with one count of rape of an unconscious victim, 18 Pa.C.S. § 3122.1(a)(1), one count of aggravated indecent assault on person less than 16 years of age, 18 Pa.C.S. § 3125(a)(8), two counts of corruption of minors, 18 Pa.C.S. § 6301(a)(1)(i) and (ii), and one count of indecent assault on person less than 16 years of age, 18 Pa.C.S. § 3126(a)(8).

Before trial began on June 28, 2021, the trial court held an on-the-record conference regarding, *inter alia*, defense counsel's concern that the prosecution may attempt to introduce inculpatory statements made by Appellant before it established that a crime, in fact, had occurred, in violation of the *corpus delicti* rule. N.T. (Trial), 6/28/21, at 34. The trial court determined that the issue would be addressed if it presented itself during the course of trial. N.T. at 35, 37.

_____

[1] The text conversation included O.J.'s lament to Appellant that he was old enough to know how drunk she was, that she was not in the right state of mind that night, and that he took advantage of her. When she stated, "That was my virginity that you took from me," Appellant replied, "I feel bad as well because I was informed you was a virgin. How you think I feel about that?" N.T. at 108.

During opening statements, the Commonwealth made the following statement, "[a]nd I imagine at some point they are going to come up here and provide you with their story." N.T. at 59. In response to that statement, the defense moved for a mistrial. N.T. at 60. The trial court denied the motion for mistrial, but gave a curative instruction to the jury. N.T. at 61.

Shortly after, the Commonwealth called the victim as a witness and the following exchange occurred:

**Commonwealth:** And at some point did you have a conversation with the defendant?

**Witness:** Yes.

**Commonwealth:** Was that – how was that[?] telephone, Facetime, something else?

**Witness:** Facetime.

N.T. at 101.

At that time, the call was marked as Commonwealth's Exhibit 1, and a side bar was had in anticipation of the Commonwealth introducing portions of the recording of the Facetime call in question. N.T. at 102. The defense again voiced concern that inculpatory statements made by Appellant were on the recording and would be heard by the jury before evidence of a rape had been introduced, in violation of *corpus delicti*. ***Id***.

The Commonwealth argued it was not required to prove beyond a reasonable doubt that a crime occurred before it could gain admission of the recording into evidence, but, rather, needed only to support its admission with

proof by a preponderance of the evidence to meet the exception to the *corpus delicti* rule. *Id*. To that extent, the Commonwealth argued it had already presented such evidence relative to the charges of aggravated indecent assault occurring during the early part of the August 2017 evening in question, which would thus entitle it to reveal the recordings to the jury, as they contained Appellant's admission of both crimes. *Id*. The trial court agreed that Appellant's recorded statements contemplated both crimes and that both crimes were, particularly under the facts, closely related given the continuous course of action in which they both occurred. Accordingly, the trial court deemed the recordings of Appellant's statements admissible. N.T. at 103.

At the conclusion of trial, a jury found Appellant guilty on all counts. *See* Sentencing Order, 6/29/2021. At Appellant's January 4, 2022 sentencing, a Sexually Violent Predator hearing was held wherein the trial court determined that the Appellant fit the criteria to be classified as a sexually violent predator. N.T. (Sentencing), 1/4/22, at 38. Immediately afterward, Appellant's sentencing hearing commenced, and he was ultimately sentenced to an aggregate sentence of seven to fifteen years' incarceration. N.T. at 50-51.

On February 3, 2022, Appellant timely filed a Notice of Appeal, and the trial court issued a Pa.R.A.P. 1925 order advising Appellant that he must serve a statement of matters complained of on appeal within 30 days on February 4, 2022. Appellant filed a statement of matters complained on March 7, 2022,

alleging (1) that the court erred in denying [Appellant's] request for a mistrial when the Commonwealth told the jury in their opening statement that the defense would provide the jury with its own story, in violation of Appellant's Fifth Amendment right against self-incrimination; and (2) that the court abused its discretion by admitting Appellant's inculpatory statements in violation of the *corpus delecti* rule where the exception to the rule was not met. Def's Concise Statement of Errors Complained of on Appeal, 3/7/22.

In his appellate brief, Appellant presents the issues raised previously in his timely Rule 1925(b) statement:

1. Did the trial court err in denying Mr. Nichol's request for a mistrial where the Assistant District Attorney, in her opening [remarks], told the jury that the defense was going to provide the jury with its own story as to what happened in violation of Mr. Nichol's 5th Amendment right against self-incrimination?

2. Did the trial court abuse its discretion in admitting Mr. Nichol's inculpatory statements in violation of the *corpus delicti* rule where the "closely related crimes" exception was not met?

Brief for Appellant, at 6.

In his first issue, Appellant claims that the trial court abused its discretion when it denied Appellants motion for a mistrial. He argues that the Commonwealth's opening statement, which indicated to the jury that she imagined the defense would come up before the jury and tell its story, although she did not know what its version of events would be, was prejudicial because it violated Appellant's Fifth Amendment right against incrimination and denied him a fair trial.

"The purpose of an opening statement is to apprise the jury of how the case will develop, its background, and what will be attempted to be proved[.]" **Commonwealth v. Parker**, 919 A.2d 943, 950 (Pa. 2007). Opening statements or arguments are not evidence, however, and courts generally "afford[ counsel] reasonable latitude in presenting opening arguments to the jury." **Id**.

It follows that courts regularly instruct juries that they are to consider only the evidence presented at trial to reach their verdicts. **See** Pa. Suggested Standard Civil Jury Instructions § 1.107 (5th. Ed. 2020) (emphasizing that the purpose of an opening statement is to give counsel the opportunity to present "a summary of what the lawyer expects the evidence will show [and highlight] the disagreements and factual differences between the parties in order to help [the factfinder] judge the significance of the evidence when it is presented.")

Our rules of criminal procedure, meanwhile, provide that a court may declare a mistrial "only for reasons of manifest necessity." Pa.R.Crim.P. 605(B). When reviewing a trial court's denial of a motion for a mistrial, particularly in the context of a prosecutor's comments during opening statements, we assess whether the trial court abused its discretion. **Commonwealth v. Cash**, 137 A.3d 1262, 1273 (Pa. 2016). In determining whether a prosecutor committed misconduct during opening statements such as to justify the grant of a mistrial, our Supreme Court has stated:

It is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted. Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a true verdict. In considering appellant's claims of prosecutorial misconduct, we note that a prosecutor's comments are not evidence.... Opening statements must be fair deductions from the evidence which the prosecutor expects will be presented at trial.

*Commonwealth v. Bronshtein*, 691 A.2d 907, 917-18 (Pa. 1997) (citations and paragraph breaks omitted).

The portion of the prosecutor's opening statement to which Appellant objected is as follows:

**Commonwealth:** And I imagine at some point Ms. Monson [defense counsel] is going to come up here and provide you with their story. I don't know what that's going to be. Maybe it's we never had sex and I never put my finger in her vagina. Maybe it's going to be, yeah, we had sex but I thought she was 16 or I thought she was 17 or I didn't know how old she was and she was awake and she wanted it, she was begging me for it.

N.T., 4/6/22, at 59-60.

As noted above, defense counsel requested a sidebar discussion, at which she argued, "The DA just told the jury that we're going to present our side of the story and that my client knows what happened and he's going to present that that's—", to which the trial court ruled that the request for mistrial denied and informed counsel it would give an appropriate instruction.

At the conclusion of sidebar, the trial court instructed the jury, as follows:

**Trial Court:**     Next [defense] counsel will give their opening statement now.  But I want to reiterate for you, like I've already told you before, and you'll hear again, there's no requirement on the defendant to prove anything.  They don't have to testify.  They don't have to present evidence.

It's solely the burden of the Commonwealth to prove this case to you beyond a reasonable doubt. And if they don't, you must return a not guilty verdict.  If they do, then you must return a guilty verdict.  There's no burden on the defense to present you anything.

N.T. at 61.

Here, the prosecutor's opening statement commentary that she could not imagine what story the defense would present was brief, and the trial court, in immediate response to defense counsel's sidebar objection, delivered to the jury a complete curative instruction informing it that the defense was not required to present anything during trial as it was the Commonwealth's burden, alone, to prove its case beyond a reasonable doubt.  "When the trial court provides cautionary instructions to the jury in the event the defense raises a motion for a mistrial, [t]he law presumes that the jury will follow the instructions of the court.."  ***Commonwealth v. Parker***, 957 A.2d 311, 319 (Pa. Super. 2008).  We conclude, therefore, that the trial court did not abuse its discretion in denying Appellant's motion for mistrial.

In Appellant's second issue, he argues that his inculpatory statements made during both a wire recorded conversation and an Instagram text message exchange between the victim and him were improperly admitted in violation of the *corpus delicti* rule.  Specifically, he contends that although other evidence presented by the Commonwealth admittedly established that

- 10 -

he committed an aggravated indecent assault against the victim during the earlier part of the evening in question, it was too attenuated to the rape alleged to have occurred later that evening for it to gain admission into evidence under the "closely related crimes" principle described in the *corpus delicti* rule. We disagree.

> The *corpus delicti* rule concerns the admissibility of evidence—specifically, a defendant's inculpatory statement—which we review for an abuse of discretion. **Commonwealth v. Murray**, 174 A.3d 1147, 1154 (Pa. Super. 2017). "The purpose of the rule is to prevent a conviction based solely upon a confession where no crime has in fact been committed." **Commonwealth v. Fears**, 575 Pa. 281, 836 A.2d 52, 67 (2003). Thus:

> > The *corpus delicti* rule requires the Commonwealth to present evidence that: (1) a loss has occurred; and (2) the loss occurred as a result of a criminal agency. Only then can "the Commonwealth ... rely upon statements and declarations of the accused" to prove that the accused was, in fact, the criminal agent responsible for the loss.

> **Commonwealth v. Taylor**, 574 Pa. 390, 831 A.2d 587, 590 (2003) (citation omitted). In application, the rule requires a trial court to consider the admissibility of a defendant's statement in two phases:

> > (1) "In the first phase, the court determines whether the Commonwealth has proven the *corpus delicti* of the crimes charged by a preponderance of the evidence. If so, the confession [or extrajudicial statement] of the defendant is admissible[;]" (2) "In the second phase, the rule requires that the Commonwealth prove the *corpus delicti* to the factfinder's satisfaction beyond a reasonable doubt before the factfinder is permitted to consider the confession [or extrajudicial statement] in assessing the defendant's innocence or guilt."

- 11 -

*Commonwealth v. Bullock*, 170 A.3d 1109, 1118 (Pa. Super. 2017) (citation omitted). Furthermore, it is well-settled that:

> [W]here a defendant's confession relates to two separate crimes with which he is charged, and where independent evidence establishes the *corpus delicti* of only one of those crimes, the confession may be admissible as evidence of the commission of the other crime. This will be the case only where the relationship between the two crimes is sufficiently close to ensure that the policies underlying the *corpus delicti* rule are not violated.

*Commonwealth v. McMullen*, 545 Pa. 361, 681 A.2d 717, 723 (1996).

*Commonwealth v. Dula*, 262 A.3d 609, 637-638 (Pa. Super. 2021).

As noted above, the Commonwealth presented evidence that 21-year-old Appellant engaged a 14 year-old O.J. in a night of smoking marijuana and drinking alcohol that led to sexual activity between them. N.T. at 73-138. What began with "touching" and kissing one another in the park progressed to Appellant placing his hand down the front of the victim's pants and inserting his finger in her vagina while they were in Appellant's car with two other juveniles, A.A. and J.Y, driving back to A.A.'s house. N.T. at 97-98.

Over defense objection, the trial court thus ruled that Appellant's inculpatory statements were admissible under the "closely related crimes" principle described in the *corpus delicti* rule, as the statements related to the entire evening at issue, and because the Commonwealth not only had presented ample evidence of Appellant's aggravated sexual assault of an impaired O.J. while at the park and in the car ride back to A.A.'s house, it also had established a continuous "course of conduct" that soon placed Appellant

and the three minors inside A.A.'s house, where Appellant would usher a still intoxicated, erratic-behaving, completely undressed O.J. into a bedroom, close the door behind them, and direct the other two minors not to enter, until he walked out and bragged to the 14 year-old boy that O.J. was now waiting for him.

We discern no error with the trial court's determination that such evidence, independent of Appellant's subsequent inculpatory statements to the victim, established a continuing course of escalating, but closely related, sex crimes involving vaginal penetration perpetrated by Appellant against an intoxicated minor victim, and culminating with Appellant's own words, spoken to the juveniles present, suggesting he had engaged in sexual intercourse. Such evidence thus established the necessary close nexus between the two crimes of aggravated sexual assault and rape charged in the present case to support the trial court's ruling declaring Appellant's inculpatory statements admissible under the *corpus delicti* rule. Accordingly, we find no merit to Appellant's second issue.

Judgment of sentence Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/30/2022