J-S45040-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAMON CRUZ-CRUZ | : | |
| | : | |
| Appellant | : | No. 1633 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 27, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000588-2023

BEFORE: OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED MARCH 14, 2025**

Ramon Cruz-Cruz appeals from the judgment of sentence entered following his convictions for two counts each of corrupt organizations, dealing in the proceeds of unlawful activities, criminal use of a communication facility, possession of a controlled substance with intent to deliver ("PWID"), conspiracy to commit PWID, possession of a controlled substance ("possession"), and conspiracy to commit possession.[1] Cruz-Cruz argues the court erred in admitting certain evidence. We affirm.

The trial court offered a thorough recitation of the facts presented at Cruz-Cruz's bench trial. **See** Trial Court Opinion, filed 4/22/24, at 2-8. The Commonwealth introduced the testimony of three detectives, one confidential

---

[1] **See** 18 Pa.C.S.A. §§ 911(b)(3), 911(b)(4), 5111(a)(1), 7512(a), 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 903(a)(1), 35 P.S. § 780-113(a)(16), and 18 Pa.C.S.A. § 903(a)(1), respectively.

informant, and co-defendant Richard Rivera Maldonado. The evidence established the existence of a drug trafficking organization in the Reading area led by Julio Echevarria-Estremera and Jeremy Morales, for whom Cruz-Cruz worked.

We will recite the facts that most closely relate to Cruz-Cruz's involvement. In February 2022, detectives in Berks and Montgomery counties began investigating drug sales in the Norristown area. During the investigation, they observed cocaine going to and from Echevarria-Estremera's residence. They also arranged several controlled buys of cocaine from Morales. In September 2022, as heard on a wiretap, Morales and Echevarria-Estremera discussed the price of cocaine and/or fentanyl.

Approximately a week later, on September 30, Morales received a call from Cruz-Cruz. Cruz-Cruz told Morales that he sent him a payment through Cash app, had seven grams of cocaine left, and that he intended to sell it. *Id.* at 4; *see also* N.T. at 86-87. Early the next month, on October 6, 2022, Morales called Cruz-Cruz and told him to come to a car wash. Trial Ct. Op. at 5. A detective conducting surveillance observed Cruz-Cruz speaking with Morales at the car wash. *Id.* at 4. The next day, Cruz-Cruz asked Morales to give him 10 grams of cocaine. *Id.* at 6.

On October 15, 2022, Morales and Cruz-Cruz discussed meeting that night when Morales returned from Philadelphia. *Id.* The next day, October 16, 2022, Cruz-Cruz sent a picture to Morales of 10.49 grams of cocaine sitting on a digital scale. *Id.*

Cruz-Cruz and Morales discussed the drug trade every day between October 26 and 31, 2022. On October 26, 2022, Cruz-Cruz called Morales and discussed paying Morales $100 via Cash app. *Id.* at 7. The next day, Cruz-Cruz called Morales and they "discussed the overall drug business and how [Cruz-Cruz] is being treated poorly at the work spot." *Id.* They decided to meet and negotiate. *Id.*

On October 28, Cruz-Cruz called Morales and asked if he had any more cocaine, because they were running low *Id.* at 7. In another conversation that day, they discussed being low on drugs because another associate was supplying drugs in Lancaster. *Id.* The next day, Cruz-Cruz told Morales that he was out of cocaine and needed a resupply, had sent Morales $60 through Cash app, and had $200 in cash to give him for the balance owed. *Id.*

On October 30, Cruz-Cruz called Morales and told him the house where he was working was out of drugs, and Morales responded that he would resupply the house shortly. *Id.* The next day, Cruz-Cruz called Morales to ask him "if he is changing the cocaine because people are complaining, and the bosses are complaining they pay good money." *Id.*

In early November, the police searched the residences of Echevarria-Estremera and Morales and recovered drugs, scales, and packaging materials. *Id.* at 8. They also searched a storage unit utilized by Morales and recovered plastic bags with cocaine residue, packaging materials, and a money counter. *Id.*

Maldonado, a co-defendant, testified that he bought cocaine from Morales over the course of a year, some of which he then sold or delivered for Morales. *Id.* at 4-5. Maldonado testified that he saw Cruz-Cruz with Morales at the same garage where he received drugs from Morales. *Id.* at 4.

The Commonwealth charged Cruz-Cruz with two counts of each of the above-listed crimes. The information stated the crimes occurred between February 1, 2022, and November 4, 2022.

Prior to trial, Cruz-Cruz filed a motion *in limine* seeking to preclude evidence of his phone conversations. Cruz-Cruz asserted that their admission would violate the *corpus delicti* rule because the Commonwealth failed to independently establish the existence of the drugs they alleged Cruz-Cruz had possessed. He also requested the court preclude evidence of any drug transactions in which he was not involved. Cruz-Cruz argued that the Commonwealth had not provided notice under Rule 404(b), and there was no evidence that he had personal knowledge of those other drug transactions. He asserted, "Just because people [I know] were involved in drug transactions does not mean [I] was involved or [am] guilty." Mot. in Limine, 7/19/23, at ¶ 5. Following argument, the court denied the motion.

At trial, the Commonwealth argued that Cruz-Cruz committed the possessory crimes (1) on October 15 or 16, 2022, when he sent a picture to Morales showing his possession of 10.49 grams of cocaine, and (2) on October 28, when he "received approximately 7 grams of cocaine from Jeremy Morales." *See* N.T., 10/3/23, at 132.

At the conclusion of trial, the court convicted Cruz-Cruz on all counts. It thereafter sentenced him to an aggregate of eight to 50 years' incarceration. Cruz-Cruz filed post-sentence motions, which the court denied. Cruz-Cruz appealed.[2]

Cruz-Cruz raises the following issues.

> I. Did the trial court err by admitting incriminating communications contrary to the strictures of the *corpus delicti* rule?
>
> II. Did the trial court err by admitting Rule 404(b) evidence under a theory of *res gestae* and/or common scheme?
>
> III. Did the trial court err by admitting Rule 404(b) evidence when the Commonwealth failed to provide any reasonable written notice of its proffer?

Cruz-Cruz's Br. at 2 (suggested answers omitted).

## I. *Corpus delicti*

Cruz-Cruz contends that the admission of his statements in intercepted phone calls and texts violated the *corpus delicti* rule. *Id.* at 22. He argues that the Commonwealth was required to independently corroborate that the alleged cocaine existed on the alleged dates and there was a nexus between

---

[2] The court initially imposed sentence on October 3, 2023, but entered amended sentencing orders on October 27, 2023. The notice of appeal erroneously states the appeal is from "the conviction and sentence entered on October 23, 2023." *See* Notice of Appeal, filed 11/22/23, at 1. We have amended the caption to reflect that the appeal properly lies from the amended judgment of sentence. *See Commonwealth v. Wenzel*, 248 A.3d 540, 545 (Pa.Super. 2021).

its existence and Cruz-Cruz before the statements could be admitted. *Id.* at 23. Cruz-Cruz asserts,

> No cocaine was in fact recovered in this case. No other witness testified that they saw either Cruz-Cruz or Jeremy Morales possess cocaine on the dates of October 15 or 16, 2022 and on October 28, 2022. Morales, himself, was not called to testify and therefore never admitted on the record that either he or Cruz-Cruz possessed cocaine on those dates. This is not a matter of direct or circumstantial evidence, but a complete absence of evidence. But for the intercepted statements by Cruz-Cruz, the Commonwealth had nothing as to him.

*Id.* at 24.

Cruz-Cruz also argues that without independent corroboration that he possessed cocaine on those dates, the evidence was insufficient to prove he conspired to possess cocaine on those dates, because no evidence corroborated that he assisted or agreed to assist Morales in possessing cocaine on those dates. *Id.* at 24-25. He argues the Commonwealth's evidence regarding different drug transactions between different persons does not corroborate that Cruz-Cruz conspired to possess cocaine on the relevant dates, because the evidence must relate to the commission of the same crime – not similar crimes. *Id.* at 25 (citing 18 Pa.C.S.A. § 903(b)). He argues, "The Commonwealth's evidence was not that of a singular conspiracy but of numerous, separate conspiracies." *Id.* at 28. Cruz-Cruz contends the Commonwealth needed to prove he knew about "upstream" transactions between Morales and third persons occurring on those dates, and "[t]he fact that Morales had multiple business associates does not prove, as to Cruz-Cruz, the scope of the conspiratorial agreement[.]" *Id.* at 27-28. Cruz-Cruz also

argues the fact a detective observed him talking with Morales on October 6, 2022, does not corroborate that he possessed cocaine or conspired to do so on the relevant dates. *Id.* at 28. Cruz-Cruz similarly argues the Commonwealth failed to produce *corpus delicti* supporting the other charges. *Id.* at 29-31.[3]

Our standard of review of the admission of evidence is "limited to a determination of whether the trial court abused its discretion." *Commonwealth v. Dewald*, 317 A.3d 1020, 1035 (Pa.Super. 2024) (quoting *Commonwealth v. Hernandez*, 39 A.3d 406, 410 (Pa.Super. 2012)).

The *corpus delicti* rule entails a two-step process. The first step concerns the admissibility of the accused's statements, and the second step relates to the factfinder's consideration of those statements. *Dewald*, 317 A.3d at 1035. First, the Commonwealth must establish that a crime has been committed by a preponderance of the evidence "before a confession or admission of the accused connecting him to the crime can be admitted" into evidence. *Id.* (quoting *Hernandez*, 39 A.3d at 410). Once the statements become admissible, the Commonwealth must then establish the *corpus delicti* beyond a reasonable doubt before the defendant's inculpatory statements may be considered by the fact-finder. *Id.* Once the Commonwealth has met the first

---

[3] Cruz-Cruz contends that the *corpus delicti* rule currently has increased importance, given "the modern problems of voice-cloning by artificial intelligence as well as cell phone hacking by third persons and law enforcement agencies." Cruz-Cruz's Br. at 18. However, this challenge more properly goes to the weight of the evidence, not *corpus delicti*.

step of the *corpus delicti* rule, the factfinder may use the defendant's statements in the second step to find the defendant guilty. **See Commonwealth v. Dula**, 262 A.3d 609, 638 (Pa.Super. 2021). For example, once the Commonwealth independently proves that a controlled substance was illegally possessed by someone, not necessarily the defendant, the defendant's statements are admissible and the factfinder may use them to conclude that the defendant possessed the controlled substance. **See Commonwealth v. Karns**, 566 A.2d 615, 618 (Pa.Super. 1989).

Where multiple crimes are alleged, there is an exception to the *corpus delicti* rule for "closely related crimes." **Commonwealth v. Taylor**, 831 A.2d 587, 591 (Pa. 2003). Under the exception, the Commonwealth need only establish the *corpus delicti* of one of the crimes to render the defendant's statement admissible to establish the other crimes occurred, as well as the defendant's culpability. However, the two crimes must be "sufficiently close" as to avoid convicting the defendant for a crime that never occurred. ***Id.*** at 594, 596. When the alleged crimes occurred during a "continuing incident" or arose from a "common transaction" – even if not a singular transaction – they may be considered sufficiently close under the exception. ***Id.*** at 591-92, 596.

Thus, a defendant's admission that he committed conspiracy is admissible where the Commonwealth independently proves the commission of the crime that was the goal of the conspiracy. ***See id.*** at 596 (finding defendant's confession admissible to prove conspiracy to commit robbery where Commonwealth independently proved a robbery occurred);

*Hernandez*, 39 A.3d at 413-14 (finding defendant's confession admissible to prove conspiracy to illegally transfer firearm where other evidence established that a firearm had been illegally transferred). Similarly, if the Commonwealth independently proves that the defendant possessed a controlled substance, the defendant's confession is admissible to prove he also intended to deliver it. *See Commonwealth v. DiSabatino*, 581 A.2d 645, 648 (Pa.Super. 1990).

In *Commonwealth v. Cuevas*, 61 A.3d 292 (Pa.Super. 2013), the defendant was charged with many of the same crimes as Cruz-Cruz: PWID, possession of drug paraphernalia, corrupt organizations, criminal use of a communication facility, dealing in unlawful activities, and conspiracy. The Commonwealth introduced evidence of his intercepted phone calls, "information gleaned from controlled buys using confidential informants," surveillance showing a known drug dealer visiting the defendant's home, and evidence that a search of the defendant's home yielded drugs, packaging materials, and drug paraphernalia matching the paraphernalia found during a search of the known dealer's home. *Cuevas*, 61 A.3d at 296.

On appeal, the defendant argued that the fact-finder's consideration of his intercepted phone calls violated the *corpus delicti* rule. We held this evidence admissible under the closely related crimes exception, because the Commonwealth had proven beyond a reasonable doubt "that someone had been employed by or associated with an enterprise to conduct a pattern of racketeering activities (the distribution of large quantities of controlled

substances) in violation of our Crimes Code." *Id.* at 295. We found the other evidence constituted sufficient proof of "a widespread drug enterprise through a pattern of racketeering," such that the defendant's statements were allowed to prove the commission of the related crimes, and his own involvement. *Id.* at 296.

Turning to the case before us, we find no abuse of discretion in admitting and considering Cruz-Cruz's challenged statements under the closely related crimes exception. As in *Cuevas*, Cruz-Cruz was charged not only with PWID and possession, but with corrupt organizations. The Commonwealth therefore only needed to produce evidence that a corrupt organization existed, *i.e.*, an enterprise conducting a pattern of distributing a controlled substance. *See Cuevas*, 61 A.3d at 295; 18 Pa.C.S.A. § 911(b)(3). The Commonwealth met this burden. It submitted proof of the controlled substances and packaging materials recovered from the searches of Morales' and Echeverria-Estremera's residences; Maldonado's testimony that he sold drugs for Morales; the controlled buys from Morales; and the intercepted conversations between Morales and Echevarria-Estremera. The Commonwealth also corroborated Cruz-Cruz's involvement through evidence of the number of calls between him and Morales and the testimony that he was seen with Morales both at a car wash and at a garage where Morales distributed drugs.

The statements Cruz-Cruz made during the calls were therefore admissible to prove not only Cruz-Cruz's involvement in the corrupt organization, but the occurrence of the related crimes with which he was

charged: dealing in the proceeds of unlawful activities, criminal use of a communication facility, PWID, and possession, and conspiracy to commit corrupt organizations,[4] PWID, and possession. Each of these crimes were closely related to the existence of the corrupt organization and occurred as part of a continuing criminal episode. ***Taylor***, 831 A.2d at 591-92, 596.

Accordingly, there is no merit to Cruz-Cruz's argument that the Commonwealth needed to independently corroborate the existence of the exact cocaine which Cruz-Cruz possessed. Because the Commonwealth had met the first step of the *corpus delicti* rule, it was permitted to rely on Cruz-Cruz's own statements to prove his guilt. It similarly properly relied on Cruz-Cruz's own statements to prove the extent of his participation in the conspiracy and his knowledge of the acts of his co-conspirators.[5]

## II. Rule 404(b)

In his second issue, Cruz-Cruz argues the court abused its discretion in admitting evidence of "numerous prior bad acts involving people other than Ramon Cruz-Cruz." Cruz-Cruz's Br. at 31. He contends this violated Rule

---

[4] The second count of corrupt organizations was under the subsection of the corrupt organizations statute that makes it illegal to conspire to commit any other subsection of the statute. ***See*** 18 Pa.C.S.A. § 911(b)(4).

[5] Although the court's opinion does not mention the closely related crimes exception, it acknowledges that prior to recording Cruz-Cruz's phone calls, the Commonwealth "had established [the] crimes of possession with the intent to [deliver] of cocaine and conspiracy to commit possession with the intent to deliver cocaine through the undercover purchases of cocaine." Trial Ct. Op. at 11. We may affirm the trial court's decision on any legal basis. ***Commonwealth v. Parker***, 249 A.3d 590, 595 (Pa.Super. 2021).

404(b), and the evidence was not admissible under either the *res gestae* or common scheme exceptions to the rule. ***Id.*** at 32.

In his third issue, Cruz-Cruz further argues the prosecutor did not provide written notice that it would offer bad acts evidence as required by Rule 404(b)(3). He asserts the affidavit of probable cause was too lengthy and complex to have put him on notice of the extent of evidence the Commonwealth intended to introduce at trial and is not a substitute for written notice under the rule.

Rule of Evidence 404(b)(1) states,

Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

Pa.R.E. 404(b)(1); ***see also Commonwealth v. Garnett***, 328 A.3d 1181, 1186 (Pa.Super. 2024) ("It is well settled that evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes") (cleaned up).

The rule allows such evidence for other purposes, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," so long as "the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). Another exception to the rule, known as the *res gestae* exception, "permits the admission of evidence where it became part of the history of the case and formed part of the natural development of facts." ***Commonwealth v. Ivy***, 146 A.3d 241, 251 (Pa.Super. 2016).

Here, Cruz-Cruz argues the admission of the criminal behavior of his co-conspirators violated Rule 404(b). This argument fails. The evidence of drug deliveries committed by other persons were not "other crime[s], wrong[s], or act[s]" committed by Cruz-Cruz, unrelated to the instant charges. Rule 404(b) does not apply to this evidence. Rather, the evidence here was direct proof of the crimes with which Cruz-Cruz was charged. Cruz-Cruz was convicted of being "employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 Pa.C.S.A. § 911(b)(3). The complained-of acts were committed by others as part of the corrupt organization that the Commonwealth was tasked to prove existed. The evidence was therefore admissible to prove Cruz-Cruz's participation in the conduct of the enterprise's affairs through a pattern of racketeering activity. Furthermore, Cruz-Cruz was charged with conspiracy to commit corrupt organizations,[6] conspiracy to commit PWID, and conspiracy to commit possession. As we explained,

> It is hornbook law that a member of a conspiracy is criminally culpable for all actions taken in furtherance of the conspiracy. **See**, **e.g.**, **Commonwealth v. Lambert**, 795 A.2d 1010, 1017 (Pa.Super. 2002) (*en banc*) ("All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action." (cleaned up)). Consequently, "successful proof of a conspiracy makes each co-conspirator fully liable for all of the drugs recovered, without

---

[6] 18 Pa.C.S.A. § 911(b)(4).

- 13 -

the necessity of proving constructive possession." ***Commonwealth v. Perez***, 931 A.2d 703, 709 (Pa.Super. 2007).

***Commonwealth v. Bowens***, 265 A.3d 730, 741 (Pa.Super. 2021) (*en banc*). Cruz-Cruz does not argue the court should have excluded the evidence of the acts of his co-conspirators as irrelevant to proving the charges against him, or relevant but unfairly prejudicial. ***See*** Pa.R.E. 401, 402, 403. We perceive no abuse of discretion.

Cruz-Cruz's argument regarding notice likewise fails. The Commonwealth must provide "reasonable written notice in advance of trial" of the use of any prior bad acts evidence the prosecutor intends to introduce. Pa.R.E. 404(b)(3). Here, however, as stated above, the evidence was not of "other crime[s], wrong[s], or act[s]" committed by Cruz-Cruz, but was direct evidence of the commission of the instant crimes. Rule 404(b) does not apply to this evidence.

More to the point, Cruz-Cruz's argument is not that he received insufficient written notice of the charges against him, including those acts committed by his co-conspirators. Rather, he complains his notice was insufficient because the charging documents were overbroad. To this end, we find no relief due, because Cruz-Cruz does not assert he ever requested a bill of particulars. ***See*** Pa.R.Crim.P. 572, comment ("The traditional function of a bill of particulars is to clarify the pleadings and to limit the evidence which can be offered to support the information").

Judgement of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/14/2025